# In the United States Court of Federal Claims

No. 01-376 C
(Filed: November 30, 2006)

*************************************

| | |
|---|---|
| C.D. HAYES, INC., | * |
| | * RCFC 12(b)(1); Contract Disputes Act, 41 |
| Plaintiff, | * U.S.C. §§ 601-613; Identification of |
| | * Claims; Basis and Amount of Claims; |
| v. | * Default Termination; Termination for |
| | * Convenience; Equitable Adjustment; Law |
| THE UNITED STATES, | * of the Case; <u>Sua</u> <u>Sponte</u> Summary |
| | * Judgment |
| Defendant. | * |

*************************************

<u>Garris Neil Yarborough</u>, Fayetteville, North Carolina, for plaintiff.

<u>David A. Harrington</u>, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

      Before the court is Defendant's Partial Motion to Dismiss for Lack of Jurisdiction, which seeks dismissal of the remaining five causes of action in the Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").[1]  The court finds that plaintiff provided the contracting officer adequate notice of claims for wrongful termination and equitable adjustment, and that as a result, it possesses jurisdiction to consider the merits of the second through sixth causes of action.  However, because the court already has determined that the default termination was proper, it dismisses <u>sua</u> <u>sponte</u> the second and sixth causes of action, which allege bad faith termination and arbitrary and capricious termination.  Plaintiff can pursue its third, fourth, and fifth causes of action, which are claims for equitable adjustment, but only as they pertain to the government's alleged failure to issue necessary change orders.

---

    [1]  On August 4, 2005, Judge Lawrence M. Baskir ruled on Defendant's Motion for Partial Summary Judgment and dismissed the Complaint's first cause of action for breach of contract.  <u>C.D. Hayes, Inc. v. United States</u>, No. 01-376C (Fed. Cl. Aug. 4, 2005).  This case was transferred to the undersigned on January 9, 2006.

## I.  BACKGROUND

On December 3, 1997, the Army and Air Force Exchange Service ("AAFES") awarded Contract HQ 97-PZC-094 to C.D. Hayes, Inc., to expand the AAFES shopping center at Fort Eustis, Virginia.[2]  Compl. ¶¶ 5, 9.  The contract provided for a performance period of 540 days, beginning ten days after plaintiff's receipt of the Notice to Proceed, and specified a completion date of May 27, 1999.  Id. ¶ 10.  The contract contained the standard clauses for "Changes,"[3] "Termination for Default–Damages for Delay–Time Extensions," and "Disputes."  Id. ¶ 11.  The "Disputes" clause defined "claim" as "a written demand or written assertion by one of the contracting parties seeking the payment of money in a sum certain or other relief arising under or relating to this contract."  Def.'s Mot. Summ. J. App. 43.  The contract also contained a liquidated damages clause that assessed damages of $1,892.00 per day for each day of contract performance over the allotted time.  Compl. ¶ 12.

During the period of contract performance, numerous problems developed that caused incremental delays.  Id. ¶ 13.  Plaintiff alleges that these delays were beyond its control.  Id. According to plaintiff, most of the delays were minor, but the cumulative result after plaintiff's first six months on the project was a delay of several months.  Id. ¶ 14.  Because the individual delays were minor, plaintiff was reluctant to request formally an adjusted completion date.  Id.  In particular, plaintiff alleges that the AAFES issued in excess of 100 change orders for the entire period of performance that required plaintiff to perform work not included in the original contract or to perform work in a different sequence or method than described in the original contract.  Id. ¶¶ 17-18.  Plaintiff further alleges that through the end of May 1999, there had been approximately 119 delay-inducing problems beyond its control.  Id. ¶ 20.

On July 9, 1998, plaintiff submitted to the AAFES a written request for a 112-day extension of the completion date due to the alleged delays beyond its control.  Id. ¶ 15.  The AAFES rejected plaintiff's request in writing on August 3, 1998.  Id. ¶ 16.  On May 25, 1999, plaintiff submitted to the AAFES a second written request for an extension of the completion date due to the alleged delays.  Id. ¶ 21.  The AAFES again rejected plaintiff's request in writing on June 24, 1999.  Id. ¶ 22.

Between June and December 1999, plaintiff continued to experience delay-causing problems, such as inclement weather resulting from Hurricanes Dennis and Floyd.  Id. ¶ 23.  On

---

[2]  The facts are derived from the Complaint ("Compl."); the exhibits attached to Plaintiff's Memorandum of Law in Response to Defendant's Memorandum Regarding Jurisdiction ("Pl.'s Mar. 11, 2003 Mem. Ex."); the Appendix attached to Defendant's Partial Motion to Dismiss for Lack of Jurisdiction ("Def.'s Mot. Dismiss App."); and the Appendix attached to Defendant's Partial Motion for Summary Judgment ("Def.'s Mot. Summ. J. App.").

[3]  The precise "Changes" clause incorporated into this contract is not contained in the record before the court.

December 27, 1999, the AAFES sent plaintiff Amendment 34, which, plaintiff alleges, sought plaintiff's approval of a 53-day extension of the completion date.  Id. ¶ 24.  Plaintiff rejected the amendment as wholly insufficient to address the delays it experienced.  Id. ¶ 25.  Plaintiff contends that the AAFES failed to inform plaintiff that Amendment 34 was issued on a unilateral basis.  Id. ¶ 26.

As of January 2000, plaintiff had not completed the project and the AAFES had neither taken any action to hold plaintiff in default nor, to plaintiff's knowledge, provided an extension of the contract completion date.  Id. ¶ 27.  In early May 2000, the AAFES issued Amendment 36, which plaintiff accepted on May 2, 2000.  Id. ¶ 28.  Plaintiff asserts that although the work included in Amendment 36 was submitted at more than $120,000.00, it accepted the AAFES's offer of $109,083.00 to improve its cash-flow and the cash-flow of its subcontractors.  Id.

By a letter dated May 26, 2000, the AAFES noted the then-recent minimal staffing of the project and directed plaintiff to "furnish sufficient work forces" by June 5, 2000.  Def.'s Mot. Dismiss App. 1.

On May 31, 2000, plaintiff submitted two Requests for Information ("RFI") to the architect's contract administrator, seeking further information regarding design deficiencies it discovered in the project plans.  Compl. ¶¶ 7, 29.  Plaintiff states that the deficiencies were of such magnitude as to require it to halt work until the deficiencies were addressed.  Id. ¶ 29.

Paul M. Kelleher, an AAFES contracting officer, sent plaintiff a show cause letter on June 8, 2000, demanding that plaintiff explain why it should not be held in default for failing to provide sufficient work forces by the deadline identified in the May 26, 2000 letter.  Id. ¶ 30; Def.'s Mot. Dismiss App. 2.

Plaintiff sent Mr. Kelleher a written response to the show cause letter on June 16, 2000, disputing that it was in default under the contract.[4]  Compl. ¶ 31; Pl.'s Mar. 11, 2003 Mem. Ex. F at 3-5.  Plaintiff explained in the letter how the construction delays were beyond its control and asserted that many of the delays were caused by the AAFES.  Compl. ¶ 31; Pl.'s Mar. 11, 2003 Mem. Ex. F at 3-5.  Plaintiff identified the following circumstances as beyond its control: (1) a subcontractor was not performing; (2) two RFIs, both issued on May 31, 2000, that went unanswered by the AAFES until June 15, 2000, continued to be in dispute; (3) financial hardship resulting from the AAFES's failure to issue and pay for numerous change orders; (4) the AAFES's denial of requests for time extensions; and (5) interference by the contract administrator.  Compl. ¶ 31; Pl.'s Mar. 11, 2003 Mem. Ex. F at 3-5.

---

[4]  The record contains another letter dated June 16, 2000, addressed to Lt. Col. Virgil DeArmond, the AAFES contracting officer who replaced Mr. Kelleher.  Pl.'s Mar. 11, 2003 Mem. Ex. F at 1-2.  However, the letter appears to be in response to the June 23, 2000 termination letter.  Id.  Thus, the court questions the accuracy of the letter's purported June 16, 2000 date.

On June 23, 2000, Lt. Col. Virgil DeArmond, the AAFES contracting officer who assumed Mr. Kelleher's responsibilities for this project, sent plaintiff a letter advising that plaintiff's right to perform under the contract was terminated for default effective the close of business on June 26, 2000.  Compl. ¶ 32; Def.'s Mot. Dismiss App. 3.  The letter indicated that the decision to terminate was based on plaintiff's failure to provide sufficient work forces, its repeated refusal to man the project site, and its inability to demonstrate that its failure to comply with the contract terms was beyond its control and not the result of its fault or negligence.  Def.'s Mot. Dismiss App. 3.  Citing the "Disputes" clause of the contract, the letter advised that the default termination was the contracting officer's final decision and was appealable to the Armed Services Board of Contract Appeals or to the United States Court of Federal Claims ("Court of Federal Claims").  Id.  Plaintiff received the June 23, 2000 termination letter on June 26, 2000.  Compl. ¶¶ 33-34.

In response to the termination letter, plaintiff sent a letter to Lt. Col. DeArmond to explain the "extenuating circumstances that have delayed the project."  Pl.'s Mar. 11, 2003 Mem. Ex. F at 1-2; supra note 4.  This letter highlighted two pending change orders, problems with the electrical subcontractor, and previously-denied or ignored requests for time extensions.  Pl.'s Mar. 11, 2003 Mem. Ex. F at 1.

By letter dated September 29, 2000, plaintiff demanded a final decision from the AAFES concerning its claim that the default termination should be converted into a termination for convenience of the government.  Def.'s Mot. Dismiss App. 4, 7.  Plaintiff alleged that the default termination was wrongful, and that in issuing the default termination, the contracting officer "ignored or refused to consider the numerous causes for delay in the contract that were not due to the fault or negligence of" plaintiff.  Id. at 4.  Plaintiff asserted that the delays should have resulted in additional time and compensation to complete the contract.  Id.  The letter enumerated five reasons why plaintiff believed that the default termination was wrongful: (1) the AAFES failed to issue change orders for extra work, depriving plaintiff of $600,534.00 of the contract price and 425 days of contract performance time;[5] (2) the AAFES did not respond timely to numerous RFIs resulting from the AAFES's defective plans and specifications, depriving plaintiff of 268 days of contract performance time; (3) the contract administrator was hostile and overzealous; (4) the contracting officer failed to process requests for contract extensions due to weather delays, depriving plaintiff of 67 days of contract performance time; and (5) the AAFES terminated the contract when the project was 95 percent complete.  Id. at 4-6.

With respect to the allegation that the contract administrator was hostile and overzealous, the September 29, 2000 letter described the following wrongful behavior of the contract

_____

[5]   The heading of this section of the letter stated: "**1. Government failure to issue change orders for extra work:** 425 days and $49,506.00 of outstanding RFPs."  Def.'s Mot. Dismiss App. 4.  The court assumes that this vague statement is incorporated into plaintiff's total demand at the end of this section of "a contract price increase of $600,534.00 and a contract time extension of 425 days."  Id. at 5.

administrator: (1) deliberate undermining of plaintiff's ability to manage the project; (2) manipulating the pricing of change orders with subcontractors; (3) threatening plaintiff and its subcontractors with a "blood bath" (i.e., penalties or contract termination) if plaintiff persisted with its demand for time extensions; (4) threatening to destroy plaintiff's business; and (5) wrongfully refusing to issue Request for Performance numbers by presuming the position of the contracting officer.  Id. at 5-6.  The letter concluded by demanding compensation for "termination for convenience costs" in the amount of $1,602,497.12.  Id. at 6-7.  Plaintiff provided the appropriate certification.  Id. at 8.

On November 20, 2000, Lt. Col. DeArmond replied to plaintiff's September 29, 2000 letter, explaining that his June 23, 2000 termination letter was his final decision.  Id. at 17.  Lt. Col. DeArmond stated that the decision to issue a default termination was made after consideration of the information submitted by plaintiff in response to the AAFES's May 26, 2000, and June 8, 2000 letters.  Id.  It was Lt. Col. DeArmond's position that because he provided a written final decision regarding the default termination on June 23, 2000, no decision in response to the September 29, 2000 letter was necessary.  Id.

Plaintiff's June 25, 2001 Complaint alleges six causes of action: (1) breach of contract; (2) bad faith termination; (3) excessive government interference and breach of the implied duty to cooperate; (4) constructive suspension; (5) constructive acceleration; and (6) arbitrary and capricious termination. Compl. ¶¶ 40-64.  For each cause of action, plaintiff seeks compensatory damages in the amount of $1,602,497.12.  Id. ¶¶ 42, 45, 50, 53, 60, 64.  In its prayer for relief, plaintiff seeks total compensatory damages in the amount of $1,602,497.12 as well as attorney's fees and costs.

On February 3, 2003, defendant filed Defendant's Memorandum Regarding Jurisdiction, challenging the court's jurisdiction to entertain plaintiff's second through sixth causes of action. Plaintiff responded to defendant's memorandum on March 11, 2003, and defendant filed a reply on March 18, 2003.  On May 15, 2003, defendant formalized its jurisdictional objections by filing Defendant's Partial Motion to Dismiss for Lack of Jurisdiction.

In a May 29, 2003 order, Judge Lawrence M. Baskir found defendant's partial motion to dismiss to be premature, as the parties agreed that the court had jurisdiction over the first cause of action in the Complaint–the claim for breach of contract.  Thus, Judge Baskir stayed the remaining briefing of defendant's motion until he resolved the issue of liability as to the breach of contract claim.  Defendant filed a motion for partial summary judgment with respect to the breach of contract claim in the summer of 2004, and oral argument was held in March 2005.  On August 4, 2005, Judge Baskir ruled on defendant's motion and dismissed the breach of contract claim.  C.D. Hayes, Inc. v. United States, No. 01-376C (Fed. Cl. Aug. 4, 2005).  Judge Baskir analyzed the breach of contract claim as a claim for wrongful termination.  C.D. Hayes, Inc., slip op. at 7-10.  Judge Baskir concluded that plaintiff effectively had abandoned the project and upheld the default termination.  Id. at 8-10, 12.

Subsequent to Judge Baskir's dismissal of the Complaint's first cause of action, the parties resumed briefing defendant's motion to dismiss the five remaining causes of action for lack of jurisdiction. Upon reviewing the parties' submissions, the court requested briefing on the effect of Judge Baskir's ruling with respect to the law of the case doctrine. Briefing was completed on August 30, 2006, and the court heard argument on defendant's motion on November 20, 2006.

## II.  LEGAL STANDARDS

### A.  RCFC 12(b)(1) Motion to Dismiss

Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974); Reynolds, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B.  Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

The ability of this court to hear and decide suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of the Court of Federal Claims, waives sovereign immunity for claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2000). Further, the Tucker Act provides:

The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under [41

U.S.C. § 609(a)(1)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under [41 U.S.C. § 605].

Id. § 1491(a)(2). Thus, under the Tucker Act, the United States waives sovereign immunity and consents to be sued over contract disputes. However, the Tucker Act is merely a jurisdictional statute and does not confer a substantive, enforceable right against the United States. United States v. Testan, 424 U.S. 392, 398 (1976). The substantive right must appear in another source of law. United States v. Mitchell, 463 U.S. 206, 216 (1983).

## C. Contract Disputes Act of 1978

In this case, the substantive source of law is the Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601-613 (2000)). The CDA provides that if a contractor has a dispute with the government regarding a contract, the contractor shall make a written claim to the contracting officer. 41 U.S.C. § 605(a). The CDA does not define "claim," but as noted above, the "Disputes" clause included in the contract in this case defines a claim as "a written demand or written assertion by one of the contracting parties seeking the payment of money in a sum certain or other relief arising under or relating to this contract."[6] Def.'s Mot. Summ. J. App. 43. Further, a claim must be "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987).

If the amount of the claim exceeds $100,000, the contractor must certify that the claim is made in good faith, the supporting data are accurate and complete, and the amount requested reflects the contract adjustment for which the contractor believes the government is liable. 41 U.S.C. § 605(c)(1). The contracting officer is then required to issue a written decision. Id. §§ 605(a), (c). Contracting officers also are required to issue a decision regarding all claims by the government against the contractor. Id. § 605(a). If a contracting officer fails to issue a decision within the required time period, the failure is deemed to be a decision denying the claim. Id. § 605(c)(5). The decision of the contracting officer is final, unless the contractor makes an authorized appeal. Id. § 605(b). A contractor may appeal a contracting officer's final decision to the Court of Federal Claims. Id. § 609(a)(1).

"Under the CDA, a final decision by the contracting officer on a claim, whether asserted

---

[6] The "Disputes" clause included in the contract in this case is labeled "Disputes (Oct 1995)" but does not correspond precisely to the October 1995 "Disputes" clause found in the Federal Acquisition Regulation, which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." 48 C.F.R. § 52.233-1(c) (1995) (emphasis added).

by the contractor or the government, is a 'jurisdictional prerequisite' to further legal action thereon." Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995).  Thus, "a contractor may not present a new claim to this court that was not first presented to the contracting officer for a final decision."  Modeer v. United States, 68 Fed. Cl. 131, 137 (2005).  A claim presented to this court is not a new claim if it arises from the same operative facts and seeks the same categories of relief as the original claim.  Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003).

### III.  DISCUSSION

#### A.  The AAFES's June 23, 2000 Default Termination Letter to Plaintiff Does Not Confer Jurisdiction Over the Second Through Sixth Causes of Action

The court first addresses whether the contracting officer's June 23, 2000 default termination letter, standing alone, confers jurisdiction on the court to entertain the second through sixth causes of action, which are all claims by plaintiff against the government for money damages.  The Tucker Act confers jurisdiction on the court to render a declaratory judgment regarding the propriety of a default termination.  28 U.S.C. § 1491(a)(2); Sharman, 2 F.3d at 1572.  However, the CDA mandates that all claims by the contractor must be presented first to a contracting officer for a final decision.  41 U.S.C. § 605(a).  The June 23, 2000 default termination letter is not a final decision on any claim that plaintiff may have asserted against the government for monetary relief.  Instead, it is a final decision initiated by the government on a government claim.  Thus, because the second through sixth causes of action reflect plaintiff's allegations against the government, the June 23, 2000 default termination letter cannot serve as a basis for the court's jurisdiction.

#### B.  Plaintiff's September 29, 2000 Letter to the AAFES Confers Jurisdiction Over the Second Through Sixth Causes of Action

The court must next determine whether plaintiff's September 29, 2000 letter to the AAFES provides a basis for jurisdiction regarding the second through sixth causes of action. The letter was submitted to the contracting officer pursuant to 41 U.S.C. § 605(a), and was certified pursuant to 41 U.S.C. § 605(c).  However, the contracting officer declined to issue a decision in response to the letter.  The contracting officer's failure to issue a decision is deemed to be a denial of plaintiff's claim and thus satisfies the CDA's requirement of a final decision. Id. § 605(c)(5).

While plaintiff's September 29, 2000 letter meets certain technical requirements of the CDA (i.e., timeliness, certification), defendant argues that the letter does not contain claims equivalent to the second through sixth causes of action of the Complaint.  Def. Mot. Dismiss 10-16.  Specifically, defendant contends that the letter contains only a single claim–a claim for the conversion of the default termination into a termination for the convenience of the government.

Id. at 11-14.  Conversely, plaintiff contends that in addition to the claim for conversion of the default termination, the letter includes claims for bad faith termination, excessive government interference, constructive suspension, constructive acceleration, and arbitrary and capricious termination.  Pl.'s Mar. 11, 2003 Mem. 4; see also id. at 8 (arguing that the letter seeks "$1,602,497.12 based on a variety of grounds for compensation"); Pl.'s Oct. 28, 2005 Mem. 3 (asserting that "the six different counts within the complaint are different ways of analyzing and legally supporting the same set of operative facts").

A claim for the conversion of a default termination into a termination for the convenience of the government is separate and distinct from monetary claims for termination costs and claims for equitable adjustment.  See J.C. Equip. Corp. v. England, 360 F.3d 1311, 1318 (Fed. Cir. 2004) (holding that a claim for equitable adjustment did not present a claim for conversion of a default termination to a termination for convenience); Armour of Am. v. United States, 69 Fed. Cl. 587, 590 (2006); DePonte Invs., Inc. v. United States, 54 Fed. Cl. 112, 116 (2002).  In addition, a claim must be "clear and unequivocal" so that a contracting officer has "adequate notice of the basis and amount of the claim."  Contract Cleaning Maint., Inc., 811 F.2d at 592. Further, claims in this court must arise from the same operative facts and seek the same categories of relief as the claims presented to the contracting officer.  Scott Timber Co., 333 F.3d at 1365.  The court retains jurisdiction if a complaint "merely assert[s] differing theories" for the recovery sought in the certified claim.  Id.

Defendant disputes plaintiff's contention that the September 29, 2000 letter describes one set of operative facts and that its Complaint merely enumerates six "different ways of analyzing and legally supporting" these facts.  See Pl.'s Oct. 28, 2005 Mem. 3.  Plaintiff argues that the September 29, 2000 letter clearly and unequivocally identifies six claims.  Pl.'s Mar. 11, 2003 Mem. 8.

Plaintiff's September 29, 2000 letter is not as clear as plaintiff contends.  Indeed, plaintiff's qualification that its letter includes a clear and unequivocal statement of the claim "when viewed in the context" of certain other correspondence between plaintiff and the AAFES undercuts its position.  See Pl.'s Mar. 11, 2003 Mem. 8.  If the court must look outside the corners of the September 29, 2000 letter to ascertain its intended meaning, then it necessarily follows that the letter is not entirely clear and unequivocal.  However, this fact is not fatal to plaintiff's argument.  Precedent dictates that the contracting officer must have adequate notice of both the factual basis for the claim and the amount of the claim.  Through a generous reading of plaintiff's letter, the court is able to ascertain a potential factual basis for the claims of bad faith termination[7] and arbitrary and capricious termination.[8]  Specifically, the court finds that the

---

[7]  Plaintiff's standard of proof of a claim of bad faith is well established:

Any analysis of a question of Governmental bad faith must begin with the presumption that public officials act "conscientiously in the discharge of their duties."  The court has always been "loath to find to the contrary," and it requires

allegations concerning the hostility and overzealousness of the contract administrator, including, inter alia, allegations regarding the manipulation of change order pricing, derogatory comments to subcontractors, threats of a "blood bath" if plaintiff persisted with demands for time extensions, and threats to destroy plaintiff's business, provide adequate notice to the contracting officer of the factual basis for these claims.  Further, the court is also able to ascertain a potential factual basis for the claims of excessive government interference and breach of the implied duty to cooperate,[9] constructive suspension,[10] and constructive acceleration.[11]  In particular, the court notes that the allegations concerning the failure to issue change orders, untimely responses to the RFIs, and weather delays provide adequate notice to the contracting officer of the factual basis for these claims.

In addition to informing the contracting officer of the factual basis for its claim, a contractor also must identify a dollar amount or sum certain associated with the claim.  A plain reading of the September 29, 2000 letter reveals claims for only two distinct dollar amounts.[12]

_____

"well-nigh irrefragable proof" to induce the court to abandon the presumption of good faith dealing.  In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some specific intent to injure the plaintiff.

Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976) (citations omitted).

[8]  "[A] termination for default that is unrelated to contract performance is arbitrary and capricious."  McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1326 (Fed. Cir. 1999).

[9]  Plaintiff's cause of action for excessive government interference and breach of the implied duty to cooperate constitutes an allegation of constructive change.  Miller Elevator Co. v. United States, 30 Fed. Cl. 662, 678 (1994).  A constructive change arises "where a contract contains the standard 'changes' provision and the contracting officer, without issuing a formal change order, requires the contractor to perform work or to utilize materials which the contractor regards as being beyond the requirements of the pertinent specifications or drawings . . . ."  Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970).

[10]  "A constructive suspension has the same effect and consequences as an actual suspension, and relief should be granted as if an actual suspension order had been issued."  Fruehauf Corp. v. United States, 587 F.2d 486, 493-94 (Ct. Cl. 1978).

[11]  The cause of action of constructive acceleration constitutes an allegation of constructive change.  Miller Elevator Co., 30 Fed. Cl. at 678; see supra note 9.

[12]  As noted above, the court considers the vague reference to "425 days and $49,506.00 of outstanding RFPs" as incorporated into the general claim for "a contract price increase of $600,534.00 and a contract time extension of 425 days."  See supra note 5.

First, plaintiff claims "termination for convenience costs" in the amount of $1,602,497.12. This sum certain is associated with plaintiff's request to convert the default termination into a termination for the convenience of the government, and neither party disputes that the letter presents such a claim. But, these "termination for convenience costs" are separate from any claims for the equitable adjustment of the contract price. See J.C. Equip. Corp., 360 F.3d at 1318. Plaintiff argues that it made such an equitable adjustment claim by asserting a second dollar amount of $600,534.00 in its letter. This amount, located at the conclusion of the section of the letter titled "Government failure to issue change orders for extra work," refers to the contract price increase plaintiff claims for all of the unissued, but allegedly necessary, change orders. These two sums certain–$1,602,497.12 and $600,534.00–were the only sums demanded in the letter and the only sums of which the contracting officer could have adequate notice.

Thus, plaintiff's September 29, 2000 letter does provide a potential factual basis and precise dollar amount for two clear and unequivocal claims. First, the letter contains a claim for the conversion of the default termination to a termination for convenience and compensation of $1,602,497.12 for "termination for convenience costs." As a jurisdictional matter, plaintiff is able to, and did, pursue its claim for "termination of convenience costs." Second, the letter contains a claim for $600,534.00 as an equitable adjustment relating to unissued change orders. As a jurisdictional matter, plaintiff can pursue its claim for this equitable adjustment under any of the legal theories identified in the Complaint's third, fourth, or fifth causes of action: excessive government interference and breach of the implied duty to cooperate, constructive suspension, or constructive acceleration. In pursuing its equitable adjustment claim, plaintiff may refer to factual allegations contained in the September 29, 2000 letter related to the AAFES's response to RFIs, hostility or overzealousness of the contract administrator, weather delays, and the status of contract completion, but only to the extent that they are strictly relevant to the alleged unissued change orders. On the other hand, plaintiff may not pursue any other factual allegations under the Complaint's third, fourth, or fifth causes of action because no dollar amounts or sums certain were demanded in association with such allegations, thereby depriving the contracting officer of any notice of the amounts claimed.

## C. The Law of the Case Doctrine Requires Dismissal of the Second and Sixth Causes of Action

While the court finds that plaintiff's September 29, 2000 letter provides a sufficient jurisdictional basis for plaintiff to assert its second and sixth causes of action, these claims ultimately should be dismissed on alternate grounds.[13] As noted above, in disposing of plaintiff's

---

[13] At oral argument, plaintiff's counsel conceded that the second and sixth causes of action were no longer viable:

> I want to begin by addressing several of the things that I think we're not going to be contesting. I think that might help narrow the issues. Although I don't agree necessarily with Judge Baskir's order, I certainly respect it. . . .

first cause of action for breach of contract, Judge Baskir considered all pertinent documents and the parties' respective arguments and held that the default termination was proper.  Because Judge Baskir's decision is well reasoned and fully supported by the record,[14] there is no reason for the court to exercise its discretion under the law of the case doctrine and disturb Judge Baskir's ruling.

The law of the case doctrine prevents a court from "reopen[ing] issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997).  However, the law of the case doctrine "directs a court's discretion," and "does not limit the tribunal's power." Arizona v. California, 460 U.S. 605, 618 (1983).  Thus, while a court has "the power to revisit prior decisions of its own . . . court in any circumstance," it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona, 460 U.S. at 618 n.8).  In sum, while the court recognizes that, under the law of the case doctrine, it has the power to reconsider its decisions until the entry of judgment, it would be inappropriate to do so in the case sub judice.  Judge Baskir's ruling is the law of the case.

It follows, then, that any cause of action asserted by plaintiff that supports plaintiff's claim for "termination of convenience" costs must be dismissed due to Judge Baskir's finding that the default termination was proper.  Specifically, plaintiff's second and sixth causes of action must be dismissed because claims that AAFES acted with bad faith, or arbitrarily and capriciously, in issuing the default termination are logically inconsistent with a finding that the default termination was proper.

The only motion before the court is defendant's motion to dismiss for lack of jurisdiction based upon the failure of plaintiff's September 29, 2000 letter to perfect the Complaint's second through sixth causes of action.  But, findings based upon the law of the case set forth in Judge Baskir's decision would not divest the court of jurisdiction to entertain plaintiff's claims.  Thus, law of the case arguments are properly heard within the context of a motion for summary judgment.  Courts "possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Celotex

---

Of course, the breach of contract claim is gone.  I think with the breach of contract claim [dismissed,] the bad faith termination claim likewise goes, and I also think the arbitrary and capricious claim may go.

Tr. of Nov. 20, 2006 Argument at 17-18.

[14] Plaintiff's counsel complimented Judge Baskir's knowledge and understanding of the facts and law of the case at oral argument. See Tr. of Nov. 20, 2006 Argument at 18 ("Judge Baskir . . . had a real understanding of this case and . . . had a real understanding of the facts and the law of this case.").

<u>Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>see also</u> <u>Rothe Dev. Corp. v. Dep't of Defense</u>, 413 F.3d 1327, 1336 (Fed. Cir. 2005) (applying the notice requirement to the prevailing party). In this case, in a May 31, 2006 order, the court provided the parties notice of the court's intent to consider the law of the case doctrine in ruling on defendant's instant motion, and directed supplemental briefing on the issue, which was completed on August 30, 2006. Accordingly, the court can properly grant summary judgment in defendant's favor on plaintiff's second and sixth causes of action based on the law of the case.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss for Lack of Jurisdiction is **DENIED**. However, the court **GRANTS** partial summary judgment for defendant and **DISMISSES** plaintiff's second and sixth causes of action. The parties shall consult to develop a proposed schedule for further proceedings concerning the Complaint's third, fourth, and fifth causes of action. The parties will file a joint status report containing their proposed schedule **no later than Friday, December 29, 2006**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge