No. 01-376C
(Judge Margaret M. Sweeney)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

C.D. HAYES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0465

Attorneys for Defendant

OF COUNSEL:

John Solan
Office of General Counsel
Army & Air Force Exchange Service
P.O. Box 650059 (GC-C)
Dallas, TX 75235-0059

Dated: January 29, 2008

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . 2

A. Submission Of Fraudulent Progress Payment Certifications . . . . . . . . . . 2

B. Claims For Allegedly Unissued Change Orders . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . 7

I. Standard Of Review . . . . . . . . . . 7

II. The False Certifications In C.D. Hayes's Progress Payment Requests Constitute Fraud Warranting Forfeiture Of All Claims For An Equitable Adjustment . . . . . . . . . . 8

III. Even if C.D. Hayes's Claims Were Not Subject To Forfeiture, C.D. Hayes's Unissued Change Order Claims Would Be Without Merit . . . . . . . . . . 12

A. C.D. Hayes Executed A Release With Respect To All Change Orders Addressed In Contract Amendments One To Thirty-Six . . . . . . . . . . 12

B. C.D. Hayes Is Not Entitled To An Equitable Adjustment Concerning The "Hendee Canopy" Referenced In RFP110 . . . . . . . . . . 14

C. C.D. Hayes Is Not Entitled To An Equitable Adjustment Concerning Sheet Rock Changes Referenced In RFP 97 . . . . . . . . . . 15

D. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Alleged Costs In Converting To Different Scheduling Software . . . . . . . . . . 16

E. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Downspout Changes In RFP 67 . . . . . . . . . . 17

F. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Additional Reinforcement Steel And The Concrete Truck Ramp in RFI 129 . . . . . . . . . . 18

G. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Demolition Work In The Last Phase Of The Project . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Cases:**


AAB Joint Venture v. United States,
75 Fed. Cl. 414 (2007) . . . . . . . . . . 14, 17

Ab-Tech Constr., Inc. v. United States,
31 Fed. Cl. 429 (1994), aff'd, 57 F.3d 1084 (Fed. Cir. 1995) (table) . . . . . . . . . . 9

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 7

Arlington Trust Co. v. United States,
100 F. Supp. 817 (Ct. Cl. 1951) . . . . . . . . . . 9

Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.,
731 F.2d 831 (Fed. Cir. 1984) . . . . . . . . . . 8

Barrow Utils. & Elec. Co. v. United States,
20 Cl. Ct. 113, 121 (1990) . . . . . . . . . . 17

Brown Constr. Trades v. United States,
23 Cl. Ct. 214, 216 (1991) . . . . . . . . . . 9

C.D. Hayes v. United States,
74 Fed. Cl. 699 (2006) . . . . . . . . . . passim

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 7, 8

Christopher Village LP v. United States,
360 F.3d 1319 (Fed. Cir. 2004) . . . . . . . . . . 10

Dawco Constr. Co. v. United States,
930 F.2d 872 (Fed. Cir. 1990) . . . . . . . . . . 17

DeRochemont v. United States,
23 Cl. Ct. 87, 89 (1991) . . . . . . . . . . 11

Embrey v. United States,
17 Cl. Ct. 617 (1989) . . . . . . . . . . 7

Globe Indemnity Co. v. United States,
84 Ct. Cl. 587, 594, cert. denied, 302 U.S. 707 (1937) . . . . . . . . . . 9

Hoel-Steffen Constr. Co. v. United States,
456 F.2d 760 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Imperial Tobacco Limited v. Phillip Morris, Inc.,
899 F.2d 1575 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ingalls Shipbuilding, Inc. v. United States,
21 Cl. Ct. 117, 122 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kamen Soap Prods. Co. v. United States,
124 F. Supp. 608 (Ct. Cl. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Little v. United States,
138 Ct. C 152 F. Supp. 84 (Ct. Cl. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S & E Contractors, Inc. v. United States,
406 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Young-Montenay, Inc. v. United States,
15 F.3d 1040 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

**Statutes:**

28 U.S.C. § 2514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 11

**Other Authorities:**

Black's Law Dictionary 727 (5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| C.D. HAYES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-376C |
| | ) | (Judge Margaret M. Sweeney) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, C.D. Hayes, Inc. ("C.D. Hayes"), was awarded a contract to expand and renovate an Army and Air Force Exchange Service ("AAFES") shopping center. After the contract was terminated for default,[1] C.D. Hayes asserted claims for an equitable adjustment related to allegedly unissued change orders. Not only are these claims without merit, they are barred by 28 U.S.C. § 2514 because C.D. Hayes submitted false progress payment certifications to AAFES.

**STATEMENT OF THE ISSUES**

1. Whether C.D. Hayes's claims for equitable adjustments are forfeited pursuant to 28 U.S.C. § 2514 because C.D. Hayes falsely certified in its progress payment requests that "all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued."

[1] AAFES terminated the contract for default in June 2000 because C.D. Hayes had failed to complete contract work and was not manning the construction site. This Court, finding that C.D. Hayes had abandoned the contract, upheld the Government's default termination. Order of Judge Baskir (Aug. 4, 2004).

2. Whether, under this Court's prior rulings and the terms of the contract, C.D. Hayes's claims for equitable adjustments should be rejected as a matter of law.

## STATEMENT OF THE CASE

### I. Nature of the Case

This action concerns a contract awarded to C.D. Hayes for the expansion and renovation of a shopping center at Fort Eustis, Virginia. DA1. C.D. Hayes's contract was terminated for default in June 2000. DA75. In September 2000, C.D. Hayes asserted two distinct claims with respect to the contract: (1) a claim for conversion of the default termination to a termination for convenience; and (2) a claim relating to alleged unissued change orders. C.D. Hayes v. United States, 74 Fed. Cl. 699, 707 (2006). The Court rejected C.D. Hayes's challenge to the default termination, Order of Judge Baskir (Aug. 4, 2004), but ruled that it possesses jurisdiction to entertain C.D. Hayes's claim with respect to allegedly unissued change orders, C.D. Hayes, 74 Fed. Cl. at 707.

### II. Statement of Facts

#### A. Submission Of Fraudulent Progress Payment Certifications

On December 3, 1997, AAFES awarded C.D. Hayes a contract for the expansion of a shopping center at Fort Eustis, Virginia. DA1. The contract was for the amount of $5,769,405. DA1. Construction was to proceed in six phases and be completed by May 27, 1999. See DA100-02.

The contract authorized monthly progress payments. DA11. In order to secure progress payments, the contractor was required to submit a written application, signed by its authorized representative, that certified: (1) the amounts being requested are only for performance in

accordance with the specifications, terms, and conditions of the contract; (2) payments to subcontractors and suppliers have been made from any previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by the certification; and (3) the request for payment does not include any amounts that the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract. DA11-12.

On August 4, 1999, September 9, 1999, and November 9, 1999, C.D. Hayes applied for progress payments. DA51-53, 94 (seeking payments in the amount of $119,706.00, $135,196.00 and $97,413.00, respectively). At that time, C.D. Hayes's authorized representative was company vice president and project manager, Robert D. Morris. See DA94, 152-54. As required by the contract, Mr. Morris certified upon behalf of C.D. Hayes that the work covered by each application had been completed in accordance with the contract, and that all amounts for which previous certificates for payment had been issued (i.e., all amounts due to subcontractors on the project) had been paid. DA51-53, 94, 163-69.

These progress payment certifications were false. Rather than paying subcontractors the full amount requested and received from AAFES, C.D. Hayes withheld monies intended for its subcontractors. DA145-46 (Hayes Dep. at 158-59) (acknowledging that C.D. Hayes "would take some of the money that was going from a progress payment to the subcontractors"); DA155-62 (Morris Dep. at 10-14, 16-18) (admitting that C.D. Hayes was "back charging" its subcontractors). C.D. Hayes began the practice of levying "back charges" on its subcontractors in late 1998 or early 1999. DA156-158. Although subcontractors vehemently objected, C.D. Hayes continued this practice throughout 1999 and into 2000. DA54-61 (Bay Electric) (complaining

about "bogus backcharges"); DA68 (Lawson Mechanical) (objecting that Lawson had "been backcharged over $30,000 by C.D. Hayes"); DA64 (Sprinkle Masonry) (objecting that "once again" C.D. Hayes had "illegally removed funds from one of our progress payment applications (#15 for August 1999)"); DA70 (Virginia-Carolina Steel) ("The general contractor was back-charging the subs and with-holding money for costs that the general contractor created.").

After C.D. Hayes's contract was terminated for default, Mr. Morris executed a signed, witnessed statement[2] in which he confirmed that the certification made in several of C.D. Hayes's progress payment requests was false:

> 4. During the course of my employment at [C.D. Hayes] as a vice president/project manager, I signed several documents on behalf of [C.D. Hayes], including forms called "Application and Certification for Payment." . . . [T]he Application and Certification for Payment forms I signed included those dated 08/04/99; 09/09/99; and 11/09/99.
>
> 5. At the time I made the certifications on these forms I knew that [C.D. Hayes] had not really paid all of the subcontractors the amounts they were due; due to back charges, disputes, or not being paid in a timely manner. Accordingly, the certifications I made on these forms were false and I knew that at the time.
>
> 6. I had, in fact, called the falsity of the certifications we were making to the attention of my superior at [C.D. Hayes], C. David Hayes, president of [C.D. Hayes], on more than one occasion. I was essentially told by him not to worry about such matters because that was how [C.D. Hayes] routinely conducted its business. [Mr.] Hayes further explained that he would usually authorize payment to a subcontractor when he needed some immediate future work from the subcontractor. Subcontractors whose services were

---

[2] At his deposition, Mr. Morris acknowledged that this written statement was based upon information that he provided to a Government investigator, that he was given an opportunity to review and amend the statement, that he in fact requested changes to the statement, and that the requested changes were made before he signed the statement. DA172-77.

> no longer needed in the immediate future would have to wait, perhaps indefinitely, for payment.

DA94.

### B. Claims For Allegedly Unissued Change Orders

On June 26, 2000, AAFES terminated C.D. Hayes's contract for default because C.D. Hayes had failed to man the job site and was making no progress toward completion of the project. DA75. The project was completed by C.D. Hayes's surety. See DA103.

On September 29, 2000, C.D. Hayes submitted a letter to AAFES. DA76-86; see also C.D. Hayes v. United States, 74 Fed. Cl. 699, 707 (2006). Attached to the letter were three requests for change orders seeking a total of $29,506.[3] DA81-86 (referencing alleged changes in connection with request for proposal ("RFP") 110, 111 and 113). The Court has construed this letter as asserting two independent claims: (1) a claim seeking the conversion of the contract's default termination to a termination for convenience; and (2) a claim for an equitable adjustment relating to supposedly unissued change orders. C.D. Hayes v. United States, 74 Fed. Cl. at 707. In its ruling, the Court specifically addressed the parameters of the equitable adjustment claim:

> [Plaintiff's claim] letter contains a claim for . . . an equitable adjustment relating to unissued change orders. As a jurisdictional matter, plaintiff can pursue its claim for this equitable adjustment under any of the legal theories identified in the Complaint's third, fourth, or fifth causes of action: excessive government interference and breach of the implied duty to cooperate, constructive suspension, or constructive acceleration. In pursuing its equitable adjustment claim, plaintiff may refer to factual allegations

---

[3] C.D. Hayes's claim letter contains a clerical error. It incorrectly states that C.D. Hayes had identified $49,506 in outstanding change order requests, whereas the change order attached to the letter reflect $29,506 in allegedly outstanding change orders. DA76, 81-86. C.D. Hayes no longer claims compensation is due with respect to one of the three change order requests attached to the September 2000 claim letter. See DA105-07.

> contained in the September 29, 2000 letter related to the AAFES's response to RFIs, hostility or overzealousness of the contract administrator, weather delays, and the status of contract completion, but only to the extent that they are strictly relevant to the alleged unissued change orders. On the other hand, plaintiff may not pursue any other factual allegations . . . because no dollar amounts or sums certain were demanded in association with such allegations, thereby depriving the contracting officer of any notice of the amounts claimed.

C.D. Hayes, 74 Fed. Cl. at 707-08.

During subsequent discovery, the United States asked that C.D. Hayes identify each change upon which its claim for an equitable adjustment is based. C.D. Hayes responded that it seeks an equitable adjustment of $45,421 based upon seven alleged changes. See DA105-07. Two of these alleged changes were referenced in C.D. Hayes's claim letter: Hendee canopy changes referenced in RFP 110 ($6,029); and concrete changes referenced in RFP 111 ($20,659). DA83-86. C.D. Hayes's claim letter contains no reference to the remaining five alleged changes: (1) office labor to convert to a different scheduling software ($10,000); (2) sheetrock changes referenced in RFP 97 ($4,649); (3) changes to downspouts referenced in RFP 67 ($300); (4) additional reinforcing steel and a concrete truck ramp ($150); and (5) demolition in the last phase of the project ($7,819).[4] See DA76-79.

---

[4] C.D. Hayes's interrogatory answer also refers to the first 36 amendments to the Fort Eustis contract. DA105-06. It is unclear whether C.D. Hayes contends that it is owed additional compensation with respect to change orders addressed by these contract amendments. See id. In any event, as discussed below, such a claim would be meritless as each contract amendment contains a release executed by C.D. Hayes. DA15 (contract amendment 1) ("The foregoing decrease/increase in contract price is in full settlement of all entitlements directly or indirectly arising out of these changes."); see also DA16-47, 49-50 (same).

## ARGUMENT

### I. Standard of Review

Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). It is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(b); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Facts are material only if they "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Substantive law provides the basis to identify the material facts. Embrey v. United States, 17 Cl. Ct. 617 (1989).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The non-moving party is then obliged to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof . . . at trial." Id. at 322. A failure of proof concerning an essential element of the non-moving party's case entitles the moving party to a legal judgment. Id. at 323.

As the United States Court of Appeals for the Federal Circuit emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court of Federal

Claims] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325). The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-moving party's case. Celotex, 477 U.S. at 331.

"The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). It is well settled that self-serving conclusory statements as to the ultimate issue asserted by a party's witnesses cannot raise a genuine issue of material fact. Imperial Tobacco Limited v. Phillip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990) (citing Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1564 (Fed. Cir. 1987)); RCFC 56.

In this case, the relevant facts are either not in dispute or, given the evidence presented in the appendix to this motion, not subject to a genuine dispute. Summary judgment in favor of the Government is therefore appropriate. Celotex, 477 U.S. at 325.

## II. False Certifications In C.D. Hayes's Progress Payment Requests Constitute Fraud Warranting Forfeiture Of All Claims For An Equitable Adjustment

The forfeiture statute, 28 U.S.C. § 2514 ("section 2514"), requires the forfeiture of any claim filed against the United States in this Court by any entity who has attempted to practice any fraud against the United States in the proof, statement, establishment, or allowance of a claim:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514 (1994).

Section 2514 is one of the several "elaborate provisions" that Congress has made for dealing with contractors' fraudulent claims. S & E Contractors, Inc. v. United States, 406 U.S. 1, 16 (1972). Section 2514 effectively withdraws the United States' consent to be sued by contractors who have committed fraud in their contracts with the Government. Kamen Soap Prods. Co. v. United States, 129 Ct. Cl. 619, 641, 124 F. Supp. 608, 620 (1954); Globe Indemnity Co. v. United States, 84 Ct. Cl. 587, 594, cert. denied, 302 U.S. 707 (1937). It "goes further than merely banning fraudulent claims," but "provides for a forfeiture of the claim if any fraud is practiced or attempted to be practiced in proving, establishing or allowing a claim." Kamen Soap, 129 Ct. Cl. at 641, 124 F. Supp. at 620 (emphasis added); see also Arlington Trust Co. v. United States, 121 Ct. Cl. 32, 36, 100 F. Supp. 817, 818 (1951); Ab-Tech Constr., Inc. v. United States, 31 Fed. Cl. 429, 436 (1994), aff'd, 57 F.3d 1084 (Fed. Cir. 1995) (table); Brown Constr. Trades v. United States, 23 Cl. Ct. 214, 216 (1991). To the extent that the United States can establish that C.D. Hayes committed or attempted to commit any fraud with respect to its contract, any claims under that contract must be forfeited in their entirety:

> It is true that the forfeiture statute . . . was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where . . . fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V-241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.

Little v. United States, 138 Ct. Cl. 773, 778, 152 F. Supp. 84, 87-88 (1957) (emphasis added), quoted in Ab-Tech Constr., 31 Fed. Cl. at 435-36. "[A]ny degree of fraud is material as a matter of law." Christopher Village LP v. United States, 360 F.3d 1319, 1335-37 (Fed. Cir. 2004).

Generally, under section 2514, the United States must show that (1) the plaintiff knowingly made false statements or claims to the United States and (2) such statements were made with the intent to deceive. Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 122 (1990); see also Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1042 (Fed. Cir. 1994). Although the elements of a section 2514 forfeiture must be established by clear and convincing evidence, this evidence ordinarily is "established through circumstances," rather than through direct admissions from the defrauding party. Kamen Soap, 129 Ct. Cl. at 642, 124 F. Supp. at 620; see also Black's Law Dictionary 727 (5th ed. 1979) (intent: "[b]eing a state of mind, is rarely susceptible of direct proof, but must ordinarily be inferred from the facts").

Under the Fort Eustis contract, before it could obtain a progress payments from AAFES, C.D. Hayes was required certify that "payments to subcontractors and suppliers have been made from any previous payments received under the contract," that "timely payments will be made from the proceeds of the payment covered by this certification," and that "this request for payment does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor." DA11-12.

In accordance with the contract, C.D. Hayes submitted forms entitled "Application and Certification for Payment" to obtain progress payments from AAFES. DA51-53. The progress payment requests submitted on August 4, 1999, September 9, 1999, and November 9, 1999, were executed upon behalf of C.D. Hayes by company vice president Robert D. Morris. DA51-53,

163-69. In these requests, C.D. Hayes certified that "all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued." DA51-53, 168-69.

C.D. Hayes's certifications were false. During depositions, both company president C. David Hayes, and company vice president Robert D. Morris, admitted that C.D. Hayes had withheld "back charges" from progress payments intended for its subcontractors. DA145-46, 155-62. This testimony is confirmed by the written statement given by Mr. Morris to an Army investigator on August 4, 2000, DA94, and by written complaints that C.D. Hayes received from subcontractors during 1999 and 2000, DA54-61, 64, 68, 70 (objecting that C.D. Hayes had failed to make payments and was withholding "bogus back charges").

Simply put, C.D. Hayes submitted progress payment requests certifying that "all amounts have been paid by the Contractor for Work for which previous Certificates of Payments were issued" in order to obtain additional payments from AAFES, despite the fact that the company had deducted "back charges" from amounts previously requested upon behalf of its subcontractors. At least three progress payment requests submitted by C.D. Hayes in connection with the Fort Eustis contract contained such false certifications.

These admittedly false certifications were plainly fraudulent. C.D. Hayes could not obtain progress payments without first certifying that it had paid its subcontractors, and it knowingly submitted the false certifications to obtain that payment. Accordingly, the equitable adjustment claims asserted by C.D. Hayes should be forfeited pursuant to 28 U.S.C. § 2514. <u>See</u> <u>DeRochemont v. United States</u>, 23 Cl. Ct. 87, 89 (1991) (finding in pre-trial decision that section 2514 should forfeit tax refund claim because "the only conclusion that can be drawn from" taxpayer's false representation in administrative claim was that he intended to deceive the

Government and the Court). The Court can plainly infer from Mr. Morris's admission, including that "the certifications [he] made on these forms were false that [he] knew that at that time," DA94, and the other submitted evidence, that C.D. Hayes had the requisite intent to deceive the Government under section 2514 for purposes of summary judgment. See Young-Montenay, 15 F.3d at 1042-43.

## III. Even if C.D. Hayes's Claims Were Not Subject To Forfeiture, C.D. Hayes's Unissued Change Order Claims Would Be Without Merit

### A. C.D. Hayes Executed A Release With Respect To All Change Orders Addressed By Contract Amendments One To Thirty-Six

Even if the Court were to consider the merits of C.D. Hayes's unissued change order claims, they would be meritless. The Fort Eustis contract provides that the contracting officer may change work within the general scope of the contract "by written order designated or indicated to be a change order." DA8 (paragraph 36(a)). In addition, any other written or oral order from the contracting officer, which causes a change in the material, the specifications, or the method or manner of work, shall be treated as a change order "provided that the contractor gives the contracting officer written notice stating the date, circumstance, source of the order, and that the contractor regards the order as a change order." DA8 (paragraph 36(b)). However, no claim can be approved for "cost[s] incurred more than 20 days before the contractor gives written notice" to the contracting officer. DA8 (paragraph 36(d)). Additionally, claims asserted after final payment to the contractor must be rejected. DA9 (paragraph 36(f)).

In response to the United States' request that C.D. Hayes identify all change orders upon which its claim for an equitable adjustment is based, C.D. Hayes states that there were over 110 actual and constructive change to the Fort Eustis contract. DA105-06. C.D. Hayes notes that

equitable adjustments relating to these changes were made in 36 contract amendments. Id. To the extent that C.D. Hayes is contending that it is entitled to additional compensation for change orders addressed in the respective contract amendments, its claim is without merit.

In November 2006, this Court ruled that it only possesses jurisdiction to entertain a claim for equitable adjustments based upon "alleged unissued change orders." C.D. Hayes, 74 Fed. Cl. at 707-08. Change orders addressed by AAFES in the respective contract amendments are plainly not "unissued change orders." The Court, therefore, does not possess jurisdiction to entertain a claim objecting to the compensation provided in the respective contract amendments.

In addition, each contract amendment states that "[t]he foregoing decrease/increase in contract price is in full settlement of all entitlements directly or indirectly arising out of these changes." DA15-47, 49-50. This unequivocal release bars any claim by C.D. Hayes for additional compensation for any changes addressed in the respective contract amendments.

Accordingly, to the extent that C.D. Hayes seeks an equitable adjustment for claims previously addressed by the respective contract amendments, the Court should grant summary judgment in favor of the United States.

**B. C.D. Hayes Is Not Entitled To An Equitable Adjustment Concerning The "Hendee Canopy" Referenced In RFP110**

C.D. Hayes seeks an equitable adjustment of $6,029 for "Hendee canopy changes" during phase one of the project. DA106. The contract expressly states that no claim for costs incurred more than 20 days before the contractor gives the written notice required by paragraph 36(b) will be paid. DA8. On May 26, 1998, upon reviewing a C.D. Hayes submittal, the project architect informed C.D. Hayes that brown material should be used for the phase one canopies. DA149A (Hayes Ex. 13). Although C.D. Hayes now contends that this information constituted a

contractual change, C.D. Hayes did not request that the contracting officer treat the architect's letter as a change until almost two years later. DA85-86 (providing written notice to the contracting officer on March 30, 2000). C.D. Hayes plainly failed to comply with the contractual notice requirement.

"It is true that notice provisions should 'not be applied too technically and illiberally where the Government is quite aware of the operative facts'" and, therefore, suffers no prejudice from the lack of notice. AAB Joint Venture v. United States, 75 Fed. Cl. 414, 424 (2007) (quoting Hoel-Steffen Constr. Co. v. United States, 456 F.2d 760, 768 (Ct. Cl. 1972)). That is, "the notice provision may not be strictly enforced if the contracting officer gives an oral directive knowing full well that it differs from the specifications." Id. "In contrast, where lack of notice by the contractor forecloses less costly alternative solutions or avoidance of contractor claims by the government, then the notice provision is likely to be enforced." Id. "The overriding principle to be followed is that '[w]ritten notice as to constructive changes must be supplied by the contractor before such time that the Government would suffer if not apprised of the facts.'" Id. (quoting Calfon Constr., Inc. v. United States, 18 Cl. Ct. 426, 438 (1989)).

Here, C.D. Hayes's failure to provide timely notice plainly precluded the Government from intervening to correct the problem that C.D. Hayes itself was creating. Hendee canopy costs were incurred because C.D. Hayes failed to provide the required submittal to the project architect – not because of a contractual change. During his deposition, Mr. Hayes explained how the submittal process should work. First, C.D. Hayes would approach the supplier of needed material (here, shade cloth) to request a product description and price. When the information arrived, it was provided to the project architect. The architect would then review the proposed material and

would sign off on the proposed purchase. After receiving the architect's approval, the contractor would purchase material for the project. DA116-18 (Hayes Dep. at 37-39).

C.D. Hayes failed to follow this process with respect to Hendee canopy shade cloth. Canopy shade cloth is a custom manufactured product. C.D. Hayes nevertheless opted to order canopy cloth before making the requisite submittal to the project architect. DA134-35. As a result, when the architect informed C.D. Hayes that brown – not blue – canopies were to be installed, it was too late for C.D. Hayes to cancel the shade cloth order. DA134-35.

In sum, not only did C.D. Hayes fail to provide the contracting officer written notice of the purported change for nearly two years, the costs claimed were the direct result of C.D. Hayes's failure to first obtain architect approval of its proposed purchase. Thus, C.D. Hayes is not entitled to an equitable adjustment concerning "Hendee canopy changes," and, to the extent that this claim is not forfeited for the reasons previously discussed, the Court should enter summary judgment in favor of the United States.

### C. C.D. Hayes Is Not Entitled To An Equitable Adjustment Concerning Sheet Rock Changes Referenced In RFP 97

C.D. Hayes seeks an equitable adjustment of $4,647 concerning "GWB sheet rock" changes during the second phase of the project. DA106. C.D. Hayes's September 29, 2000 claim letter makes no reference to sheetrock changes. DA76-80. Nor do the requests for change orders appended to C.D. Hayes's claim letter include any such reference. DA81-86. The Court, therefore, does not have jurisdiction to entertain this claim for an equitable adjustment. C.D. Hayes, 74 Fed. Cl. at 707-08. Furthermore, AAFES paid $4,647 for GWB sheetrock changes in October 2000. DA103-04. Indeed, an attachment to C.D. Hayes's own interrogatory answer acknowledges that contract amendment 37 increased the contract amount by $4,647 for "GWB

corrections."[5] DA105-110. Thus, C.D. Hayes's claim regarding sheetrock changes is without merit and the Court should grant summary judgment on this claim.

### D. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Alleged Costs In Converting To Different Scheduling Software

C.D. Hayes seeks a $10,000 equitable adjustment for office labor allegedly needed to convert to a different scheduling software package. This claim suffers from several fatal deficiencies.

Most fundamentally, any cost incurred in changing software scheduling practices does not relate to an "unissued change order." Only claims concerning "alleged unissued change orders" are within the Court's jurisdiction. C.D. Hayes, 74 Fed. Cl. at 707. The essential predicate to such a claim is that the contracting officer failed to respond when C.D. Hayes provided "written notice stating the date, circumstances and source of the order" that it regarded as a change order. DA8 (paragraph 36(b)). C.D. Hayes has neither produced nor identified any written statement to the contracting officer concerning scheduling software. Indeed, Mr. Hayes has admitted that no request for a change order was ever submitted to AAFES. See DA131. Because any cost to change scheduling software packages does not pertain to an "unissued change order," this claim does not come within the Court's jurisdiction.

In addition, the contract's plain language requires that timely notice of an alleged change be given to the contracting officer. See DA8 (paragraph 36(d)) (prohibiting the recovery of costs incurred more than 20 days before written notices is given to the contracting officer); DA9

---

[5] Because the contract amendment was executed on October 23, 2000, several months after the default termination, payment was not made to C.D. Hayes. See DA76-80, 103-04. Rather, payment was made to C.D. Hayes's surety, who had executed a takeover agreement and was completing the contract work. See DA103-04.

(paragraph 36(f)) (providing that no claim asserted after final payment to the contractor will be approved). Having failed to establish that it provided the requisite written notice to the contracting officer, even if there were a jurisdictional basis to entertain the claim, C.D. Hayes's claim for costs would be properly denied, given that the lack of notice precluded the contracting officer from resolving this issue before C.D. Hayes incurred the costs. See AAB Joint Venture, 75 Fed. Cl. at 424.

Lastly, C.D. Hayes has produced no evidence about actual costs incurred in changing software packages, and Mr. Hayes acknowledged at his deposition that no time sheets or other written records of costs exist. DA129-31. A contractor must produce actual evidence of damage, including time sheets, to support a request for money damages. See Dawco Constr. Co. v. United States, 930 F.2d 872, 881-82 (Fed. Cir. 1990); Barrow Utils. & Elec. Co. v. United States, 20 Cl. Ct. 113, 121 (1990).

For these reasons, to the extent that this claim is not forfeited for the reasons previously discussed, the Court should grant summary judgment on C.D. Hayes's claim for software conversion costs.

**E. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Downspout Changes In RFP 67**

C.D. Hayes seeks "approximately $300" relating to changes to downspouts in accordance with RFP 67. DA107. This change was addressed in contract amendment 24, which provided C.D. Hayes $2,475 to "tie-in downspouts at Entrance Canopy Phase III." DA38. Contract amendment 24 contains AAFES's standard release. DA38. Furthermore, at his deposition, Mr. Hayes conceded that C.D. Hayes was paid by AAFES for downspout changes. DA136-40. Accordingly, to the extent that this claim is not forfeited for the reasons previously discussed, the

Court should enter summary judgment with respect to C.D. Hayes's request for an equitable adjustment concerning downspout changes.

**F. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Additional Reinforcement Steel And The Concrete Truck Ramp in RFI 129**

C.D. Hayes seeks "approximately $150" relating to additional reinforcement steel and a concrete truck ramp in connection with RFI 129. DA107. C.D. Hayes has identified no request for a change order relating to reinforcement steel and a truck ramp to which AAFES has not responded. Furthermore, at his deposition, Mr. Hayes conceded that including this claim in C.D. Hayes's interrogatory answer was in error. DA140 (stating that identifying this claim was "error" after reviewing the respective contract amendments). To the extent that C.D. Hayes continues to seek an equitable adjustment with respect to reinforcement steel and a truck ramp, and to the extent it is not otherwise forfeited, summary judgment upon the claim is warranted.

**G. C.D. Hayes Is Not Entitled To An Equitable Adjustment For Demolition Work In The Last Phase Of The Project**

C.D. Hayes seeks $7,819 for demolition work in the last phase of the construction project. DA107. While C.D. Hayes submitted two RFI's concerning this work, it never submitted a request for a change order. In fact, less than two weeks after AAFES responded to the RFIs, C.D. Hayes's contract was terminated for default. See DA9 (paragraph 36(f)) (providing that no claim asserted after final payment to the contractor will be approved). Moreover, C.D. Hayes never performed any work on the last phase of the project.[6] DA142-43. C.D. Hayes is plainly not entitled to an equitable adjustment for work that it never performed.

[6] The last phase of the project (phase VI) was completed by C.D. Hayes's surety pursuant to a takeover agreement with AAFES. See DA103-04.

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court grant this motion for summary judgment and enter judgment in favor of the United States on all claims in this action.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-465
Facsimile: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

John Solan
Office of General Counsel
Army & Air Force Exchange Service
P.O. Box 650059 (GC-C)
Dallas, TX 75235-0059

January 29, 2008

## CERTIFICATE OF FILING

I hereby certify that on the 29th day of January 2008, a copy of "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington