## APPLICATION AND CERTIFICATION FOR PAYMENT

DOCUMENT G702

TO: AAFES
Army/Air Force Exchange Service
2727 W. LBJ Freeway
Dallas, TX 75234-7368

PROJECT: EXPAND SHOPPING CENTER
Fort Eustis, VA

APPLICATION NO: 20

PERIOD: July 31, 1999

DISTRIBUTION to:
_X_ Owner
_X_ Architect
_X_ Contractor

FROM: C.D. HAYES, Inc.
1009 EXECUTIVE DRIVE
Suite 100
CHESAPEAKE, VA 23320

VIA (Architect): KENDRICK, DAVID, DOWLING ARCHITECTS, INC.
111 Ferry Road, S.E.
Fort Walton Beach, FL 32548

CONTRACT NO.: 0310-96-0017

CONTRACT DATE: December 3, 1997

CONTRACT FOR: General Contracting Services

## CONTRACTOR'S APPLICATION FOR PAYMENT

| CHANGE ORDER SUMMARY | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| CHANGE ORDERS approved in previous months by Owner TOTAL | | See last 3 pages | See last 3 pages |
| Approved this month | | | |
| Number | Date Approved | | |
| See last 3 pages | | | |
| | TOTALS | 479,833.68 | 25,539 |
| Net change by Change Orders | | | 454,294.68 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: C.D. HAYES, Inc.
1009 Executive Drive, Suite 100
Chesapeake, Virginia 23320

BY: [signature] DATE: Aug 4 99

1. ORIGINAL CONTRACT SUM .......... $ 5,769,405
2. Net change by Change Orders .......... $ 454,295
3. CONTRACT SUM TO DATE (line 1+/-2) .......... $ 6,223,700
4. TOTAL COMPLETED & STORED TO DATE .......... $ 5,062,035
(column G)
5. RETAINAGE:
a. _10_% of Completed Work $ 501,275
(column D+E)
b. ____% of Stored Material $
(column F)
Total Retainage (Line 5a+5b or Total in Column I) .......... $ 501,275
6. TOTAL EARNED LESS RETAINAGE .......... $ 4,560,759
(Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificates) .......... $ 4,441,053
8. CURRENT PAYMENT DUE .......... $ 119,706
9. BALANCE TO FINISH, PLUS RETAINAGE .......... $ 1,662,940
(Line 3 less Line 6)

State of: VIRGINIA County of: CHESAPEAKE

Subscribed and sworn before me this 4th day of August 19 99

Notary Public: Carol A. Grazo

My Commission expires: May 31 2001

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .......... $ 119,706

(Attach explaination if amount certified differs from the amount applied for)

ARCHITECT:

BY: James W. Bailey, Contract Administrator DATE: 06 Aug 99

This Certificate is not negotiable. The AMOUNT CERTIFED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

(Document G702 Application & Certificate for Payment rev. 01/17/94)

DA0051

page one of six pages

# APPLICATION AND CERTIFICATION FOR PAYMENT

DOCUMENT CDH702

| | | | |
|---|---|---|---|
| TO: AAFES<br>Army/Air Force Exchange Service<br>2727 W. LBJ Freeway<br>Dallas, TX 75234-7368 | PROJECT: EXPAND SHOPPING CENTER<br>Fort Eustis, VA | APPLICATION NO: 21<br>PERIOD: August 31, 1999 | DISTRIBUTION to:<br>_X_ Owner<br>_X_ Architect<br>_X_ Contractor |
| FROM: C.D. HAYES, Inc.<br>1009 EXECUTIVE DRIVE<br>Suite 100<br>CHESAPEAKE, VA 23320 | VIA (Architect): KENDRICK, DAVID, DOWLING ARCHITECTS, INC.<br>111 Ferry Road, S.E.<br>Fort Walton Beach, FL 32548 | CONTRACT NO.: 0310-96-1017<br>CONTRACT DATE: December 3, 1997 | |

Pott# 0424623967

CONTRACT FOR: General Contracting Services

## CONTRACTOR'S APPLICATION FOR PAYMENT

| CHANGE ORDER SUMMARY | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| CHANGE ORDERS approved in previous months by Owner TOTAL | | See last 3 pages | See last 3 pages |
| Approved this month | | | |
| Number | Date Approved | | |
| See last | | | |
| TOTALS | | 479,833.68 | 25,539 |
| by Change Orders | | | 454,294.68 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: C.D. HAYES, Inc.
1009 Executive Drive, Suite 100
Chesapeake, Virginia 23320

BY: [signature] DATE: 9/9/99

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 5,769,405 |
| 2. Net change by Change Orders | $ | 454,295 |
| 3. CONTRACT SUM TO DATE (line 1+/-2) | $ | 6,223,700 |
| 4. TOTAL COMPLETED & STORED TO DATE (column G) | $ | 5,212,252 |
| 5. RETAINAGE: | | |
| a. 10 % of Completed Work (column D+E) $ 516,297 | | |
| b. ____ % of Stored Material (column F) $ | | |
| Total Retainage (Line 5a+5b or Total in Column I) | $ | 516,297 |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | $ | 4,695,955 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificates) | $ | 4,560,759 |
| 8. CURRENT PAYMENT DUE | $ | 135,196 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE (Line 3 less Line 6) | $ | 1,527,7[illegible] |

State of: VIRGINIA County of: CHESAPEAKE

Subscribed and sworn before me this 9 day of September 19 99

Notary Public: [signature]

My Commission expires: July 31, 2002

[Notary seal: LINDA KENNA, COMMONWEALTH OF VIRGINIA, NOTARY PUBLIC]

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED $ 135,196.—

(Attach explanation if amount certified differs from the amount applied for)

ARCHITECT:

BY: [signature] Contract Administrator DATE: 09 Sept 99

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

(Document CDH702 Application & Certificate for Payment rev. 01/17/94)

DA0052

# APPLICATION AND CERTIFICATION FOR PAYMENT

DOCUMENT CDH702 — page one of six pages

TO: AAFES
Army/Air Force Exchange Service
2727 W. LBJ Freeway
Dallas, TX 75234-7368

PROJECT: EXPAND SHOPPING CENTER
Fort Eustis, VA

APPLICATION NO: 23R2

PERIOD: October 31, 1999

DISTRIBUTION to:
_X_ Owner
_X_ Architect
_X_ Contractor

FROM: C.D. HAYES, Inc.
1009 EXECUTIVE DRIVE
Suite 100
CHESAPEAKE, VA 23320

VIA (Architect): KENDRICK, DAVID, DOWLING ARCHITECTS, INC.
111 Ferry Road, S.E.
Fort Walton Beach, FL 32548

CONTRACT NO.: 0310-96-0017

CONTRACT FOR: General Contracting Services — P.O.# 04260-13967

CONTRACT DATE: December 3, 1997

## CONTRACTOR'S APPLICATION FOR PAYMENT

| CHANGE ORDER SUMMARY | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| CHANGE ORDERS approved in previous months by Owner | TOTAL | See last 3 pages | See last 3 pages |
| Approved this month | | | |
| Number | Date Approved | | |
| See last | | | |
| | TOTALS | 451,167.68 | 25,339 |
| ...nge by Change Orders | | 476,706.68 | |

1. ORIGINAL CONTRACT SUM.......... $ 5,769,405
2. Net change by Change Orders.......... $ 476,707
3. CONTRACT SUM TO DATE (line 1+/-2).......... $ 6,246,112
4. TOTAL COMPLETED & STORED TO DATE.......... $ 5,452,654
   (column G)
5. RETAINAGE:
   a. _10_% of Completed Work $ 540,337
   (column D+E)
   b. ____% of Stored Material $
   (column F)
   Total Retainage (Line 5a+5b or Total in Column I).......... $ 540,337
6. TOTAL EARNED LESS RETAINAGE.......... $ 4,912,317
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificates).......... $ 4,814,904
8. CURRENT PAYMENT DUE.......... $ 97,413
9. BALANCE TO FINISH, PLUS RETAINAGE.......... $ 1,333,795
   (Line 3 less Line 6)

...signed Contractor certifies that to the best of the Contractor's knowledge, ...ion and belief the Work covered by this Application for payment has been ...d in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: C.D. HAYES, Inc.
1009 Executive Drive, Suite 100
Chesapeake, Virginia 23320

BY: [signature] DATE: 11/9/99

State of: VIRGINIA County of: CHESAPEAKE

Suscribed and sworn before me this 9 day of November 19 99

Notary Public: Kathune E Dapl[signature]

My Commission expires: 5-31-2002

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED.......... $ 92,413.9[?]

(Attach explaination if amount certified differs from the amount applied for)

ARCHITECT:

BY: James A. Bailey [signature] Contract Administrator DATE: 10 Nov-99

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

(Document CDH702 Application & Certificate for Payment rev. 01/17/94)

TDA0053

March 7, 2000 Certified Mail # Z 496 715 057

C. D. Hayes, Inc.
1009 Executive Boulevard, Suite 100
Chesapeake, Virginia 23327
Attn: Mr. David Hayes, President

RE: Contract No. 0310-96-007 (AAFES ADDITIONS FT. EUSTIS) Request for Backcharge credits

Dear Mr. Hayes:

We have tried on numerous occasions via conversations and or correspondence with you and your personnel to resolve the **"bogus"** back charges for cleanup and the like that were withheld from several previous progress payments to this contractor. The total money deducted from our checks represents a total sum of $37,026.33 per our calculations. In discussions with your staff it was noted that several errors were found in the temporary labor charge invoices and the other misc. charges used as a basis for the back charges.

We are requesting that a full accounting of the back charges and the subsequent adjustments be made to our account and that the sums owed to us be paid immediately.

Please feel free to contact me if you have any questions.

Sincerely,

John F. Biagas, President
BAY Electric Company, Inc.

C: file: 97-18 Back charges accountability 3-7-2000
Mr. Randy J. Biagas VP/PM
Mr. Doug Morris, VP (C. D. Hayes Inc.) via fax 887-3499
Mr. John Drake, PM (C. D. Hayes Inc.) via fax 887-3499
Mr. Jim Bailey- Contract Administrator (AAFES) via fax 887-3291
Mr. Paul Kelleher- Contracting Officer (AAFES) via fax 972-277-1684
Mr. Bob Boldt – Travelers Bond via fax 703-222-1386

THIS CHECK NOT VALID IF AMOUNT OVER $250,000.00 UNLESS COUNTERSIGNED

HQ ARMY & AIR FORCE EXCHANGE SERVICE
DALLAS, TEXAS 75266-0202

90-477/1222

DRAWN ON WELLS FARGO CENTRAL BANK, CALABASAS, CA
CON

| DATE MM | DD | YY |
|---|---|---|
| 05 | 24 | 00 |

ACCT.NO.4759-618515

EXACTLY $ | AMOUNT: ******34,020.24 | USD

PAY TO THE ORDER OF:
CD HAYES & BAY ELECTRIC

Jumas H. Leach
TREASURER

⑈1100858169⑈ ⑆122204772⑆ 4759 618515⑈

John F. Braga  Bay Electric

~~In full accordance, satisfaction, settlement and discharge of all claims and demands for loss and damage per RFP #106 including progress payments through March 2000~~ 710 [illegible]

5 MAY 2000

Bay Electric Co., INC.
PHONE 595-2300

ELECTRICAL CONTRACTOR - SERVICE & REPAIRS
REG. VIRGINIA CONTRACTOR NO. 10409

104 PRODUCTION DRIVE YORKTOWN, VIRGINIA 23693 (757) 595-2300 FAX (757) 595-6112

April 28, 2000 via Facsimile and US Mail

Paul Kelleher, C.P.M.
Contracting Officer
Construction and Equipment Division
P. O. Box 225887
Dallas, TX 75222-5887

RE: Contract No. 0310-96-007 (AAFES EXPANSION FT. EUSTIS ARMY BASE)
Pay request for the month of March, C D. Hayes, Inc. (DEFAULT of Contract)

Dear Paul:

On Friday April 28, 2000 during a site visit, Randy Biagas (VP Bay Electric Co. Inc) witnessed office equipment being moved from C.D. Hayes, Inc's office trailer to a company vehicle. As Randy proceeded to the trailer, he was told by Doug Morris (VP C. D. Hayes Inc.) that this was going to be C D Hayes's last day on this project. He also informed Randy that David Hayes (President) had forwarded a letter to his bonding company informing them that C. D. Hayes, Inc. would not be finishing this or any other project and would be effectively out of business as of 3 PM e.s.t on 4-28-2000.

Paul, Bay Electric has not been paid for our March payment request. We were informed that C. D. Hayes received this payment on April 13, 2000. We last spoke with C. D. Hayes's office staff on Monday April 24, 2000 and were told that the check was written and mailed. As of today Friday April 28, 2000 we did not receive the check via U. S. Mail.

Bay Electric has been and will continue to be severely impacted by the actions and the withdrawal of C. D. Hayes, Inc. from this project and we will look to AAFES to guide us through the transition period. We have a substantial amount of retention and "bogus backcharge" monies that we have not yet received payment. These back charges were withheld from Bay Electric on several previous payment applications without our approval or knowledge.

We are requesting that we be allowed to be a participatory party at any meeting with AAFES and the Travelers Bonding Company on the future and closeout of this project.

We look forward to hearing from you by close of business Monday May 1st, 2000 on this matter.

Sincerely,

John F. Biagas, President
BAY Electric Company, Inc.

C: file: 97-18 Hayes Default letter
Mr. Jim Bailey- Contract Administrator (AAFES) via fax 887-3291
Mr. Paul Kelleher- Contracting Officer (AAFES) via fax 972-277-1684
Mr. Bob Boldt – Travelers Bond via fax 703-222-1386

Bay Electric Co., INC.
PHONE 595-2300

ELECTRICAL CONTRACTOR - SERVICE & REPAIRS
REG. VIRGINIA CONTRACTOR NO. 10409

104 PRODUCTION DRIVE YORKTOWN, VIRGINIA 23693 (757) 595-2300 FAX (757) 595-6112

May 2, 2000 via Facsimile and US Mail

Paul Kelleher, C.P.M.
Contracting Officer
Construction and Equipment Division
P. O. Box 225887
Dallas, TX 75222-5887

RE: Contract No. 0310-96-007 (AAFES EXPANSION FT. EUSTIS ARMY BASE)
Request for past due monies and retention reduction

Dear Paul:

We understand that AAFES and the Travelers Property Casualty bonding company have come to an agreement that will allow C. D. Hayes, Inc. to complete the above referenced project. This news to us is very disturbing to say the least. In light of C.D. Hayes' payment history to this contractor, we are very hesitant to perform any work on this project without any assurances from AAFES or Travelers that we will be paid our retention, current pay applications and back monies we are currently owed.

As you are aware, C. D. Hayes Inc. has not paid this contractor for our March payment application for work we have placed. C. D. Hayes Inc. was paid for March's work over two weeks ago. We also hear that C. D. Hayes is to be paid a substantial amount of money relative to the claim filed by C. D. Hayes on the temporary trailer issue.

Please be advised that we do not intend to return to this project unless we are paid our <u>$37,026.33</u> in "bogus backcharges", our March payment of <u>$9,209.93</u>, our April Payment of <u>$19,760.84</u> and a substantial reduction or full release or guarantee of our retention which to date is <u>$86,847.35.</u>

Further, by copy of this letter, we reserve the right to claim for additional Impact cost and extended overhead that we have expended on this project. We fully intend to submit those additional costs in the near future after they are compiled.

Please feel free to contact me if you wish to discuss this or any other item.



8 Tray. Orig - PK

Sincerely,

John F. Biagas, President
BAY Electric Company, Inc.

C: file: 97-18 Payment Issues
Mr. Jim Bailey- Contract Administrator (AAFES) via fax 887-3291
Mr. Paul Kelleher- Contracting Officer (AAFES) via fax 972-277-1684
Mr. Bob Boldt – Travelers Bond via fax 703-818-6730

Bay Electric Co., INC.
PHONE 595-2300

ELECTRICAL CONTRACTOR • SERVICE & REPAIRS
REG. VIRGINIA CONTRACTOR NO. 10409

104 PRODUCTION DRIVE YORKTOWN, VIRGINIA 23693 (757) 595-2300 FAX (757) 595-6112

May 30, 2000

C. D. Hayes, Inc.

Attn: Mr. David Hayes, President

RE: Contract No. 0310-96-007 (AAFES ADDITIONS FT. EUSTIS) Response to letter of May 16, 2000 and May 30, 2000.

Dear Mr. Hayes:

We acknowledge receipt of your above referenced letters and our response to them is as follows:

First and foremost, to what address and company name are we to send this and any other correspondence to? No one from your organization has provided us with any information relative to your move or the like.

We are not in agreement with your statement that our account has been made whole and paid up to current. Reference is made to our letter to you dated March 7th, 2000 (copy attached) in which I informed you that we were due $37,026.33 in net **"bogus"** back charges. To that end we are due an additional $3,006.09 in **"bogus"** back charge money and our payments for the March and April pay applications, which, are in the amount of $9,209.93 and $19,760.84 respectfully. For your records, please find the attached copy of the two party check that we deposited after **deleting** your typed statement to which we took exception.

Once we have been paid for these overdue items and have our outstanding claim resolved with your surety, we will be happy to "man the project". It is somewhat ironic that while we were working on the project today, our foreman noticed that you had one field person on the project working on your behalf; I see an insufficient manpower problem with you the General Contractor. The bulk of our work in the main store has to do with the new overhead lighting and for that to happen we will need the new ceiling to be put in place. I see no action on your part to have this ceiling work accomplished ahead of our work and we do not intend to send additional labor to this project to be wasted as hundreds of other hours has been.

Please inform me when we can expect our overdue payments and our approved change orders you have received from AAFES.

Please feel free to contact me if you have any questions.

Sincerely,

John F. Biagas, President
BAY Electric Company, Inc.

C: file: 97-18 response letter May 30, 2000
Mr. Randy J. Biagas VP/PM
Mr. Doug Morris, VP (C. D. Hayes Inc.) via fax 887-3499
Mr. John Drake, PM (C. D. Hayes Inc.) via fax 252-334-1585
Mr. Jim Bailey- Contract Administrator (AAFES) via fax 887-3291
Mr. Paul Kelleher- Contracting Officer (AAFES) via fax 972-277-1684
Mr. Bob Boldt – Travelers Bond via fax 703-222-1386

Sprinkle MASONRY INC.

FAXED MAR 0 2 2000

State Registration #9144

THIRD REQUEST — 041900

FACSIMILE COVER LETTER

FAXED ~~APR 1 9~~ 2000

| | |
|---|---|
| DATE: | MARCH 2, 2000 |
| COMPANY NAME: | C.D. HAYES, INC. |
| ATTENTION: | DOUG MORRIS |
| PROJECT: | AAFES EXPANDED SHOPPING CENTER |
| SUBJECT: | REQUEST FOR MASONRY START - 2ND REQUEST |

On February 7, 2000, I contacted your field office and spoke with John Drake regarding my fax dated February 1, 2000 requesting a masonry schedule. At the time, he didn't have an answer for me, but he assured me that I would have an answer the following day, February 8, 2000. Sprinkle Masonry, Inc. still has not received a masonry schedule. Please send Sprinkle Masonry, Inc. the schedules, so we can plan our workforce for completion of the above named project.

If you have any questions, please contact Jack Harper or Robert Hedrick.

NUMBER OF PAGES TRANSMITTED INCLUDING COVER SHEET: 1

FROM: KRISTI ADAMS

cc: JIM BAILEY
PAUL KELLEHER

HARD COPY TO FOLLOW: YES___ NO X

REV. 3 8-14-98, FAX

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE NOTIFY US IMMEDIATLY

DA0062

1030 Ruritan Blvd. • Chesapeake, Virginia 23324-3646 • (757) 545-8435 • FAX (757) 545-4228

Sprinkle MASONRY INC.

State Registration #9144

January 21, 2000

Paul M. Kelleher, Contracting Officer
Construction & Equipment Division
Army & Air Force Exchange Service
2727 West LBJ Parkway
Dallas, Texas 75234-7388

Via Certified Mail

Reference: AAFES Expanded Shopping Center
Fort Eustis, Virginia

Subject: Remaining Payments Via Joint Check/s

Mr. Kelleher:

Sprinkle Masonry, Inc. has a total of $65,677.59 remaining due on our contract. This amount represents the remaining work to be invoiced in the amount of $260.00 and retainage withheld to date of $65,417.59.

I am requesting the balance of monies due my firm be paid by joint check to C.D. Hayes, Inc. and Sprinkle Masonry, Inc. to ensure our payment in full and subsequent release of liens for this project.

I appreciate your actions on our behalf. If you have any questions or require additional information, please contact my office.

Sincerely,

SPRINKLE MASONRY, INC.

Bob Hedrick
President

Cc: Robert W. Hedrick, Vice President, Sprinkle Masonry, Inc.
Jack E. Harper, Jr., Vice President, Sprinkle Masonry, Inc.
C. David Hayes, President, C.D. Hayes, Inc.
Doug Morris, Vice President, C.D. Hayes, Inc.
Jim Bailey, Contract Administrator, Kendrick David Dowling Architects, Inc.
Mike Sterling, Esquire, Vandeventer Black, LLP

RFH/bmj
Joint Check 1-21-00

DA0063



CF:RK 2

Sprinkle
MASONRY INC.

State Registration #9144

FAXED
OCT 14 1999

October 14, 1999

Paul M. Kelleher, Contracting Officer
Construction & Equipment Division
Army & Air Force Exchange Service
2727 West LBJ Parkway
Dallas, Texas 75234-7388

Reference: AAFES Expanded Shopping Center
Fort Eustis, Virginia

Mr. Kelleher:

Once again the contractor on this project, C.D. Hayes, Inc., has illegally removed funds from one of our payment applications [#15 for August 1999]. This invoice was reviewed and approved as submitted by AAFES for payment to my company in the amount of $57,690.00. Upon receipt of these funds, C.D. Hayes, Inc. reduced payment to my company by $21,741.25 "in order to recapture retainage which was not withheld from our first nine pay applications".

Our dispute over the retainage issue was resolved in May 1999, when:

1. C.D. Hayes, Inc. and Sprinkle Masonry, Inc. agreed to a 5% retainage rate for pay applications 1 through 9.
2. C.D. Hayes, Inc. and Sprinkle Masonry, Inc. agreed to a 10% retainage for pay application 10 and subsequent invoices.
3. C.D. Hayes, Inc. and Sprinkle Masonry, Inc. agreed these would be the retainage terms for the remainder of the project.
4. Sprinkle Masonry Inc. agreed to return to the site after this resolution and the delays caused by others had forced us to demobilize.

Please let me know what, if anything, you can do to help. If you have any questions or require additional information, please contact my office.

I appreciate your efforts.

Sincerely,

SPRINKLE MASONRY, INC.

Bob Hedrick

Bob Hedrick
President

Cc: Robert W. Hedrick, Vice President, Sprinkle Masonry Inc.
Jack E. Harper, Jr., Vice President, Sprinkle Masonry Inc.
C. David Hayes, President, C.D. Hayes, Inc.
Doug Morris, Vice President, C.D. Hayes, Inc.
Jim Bailey, Contract Administrator, Kendrick David Dowling Architects, Inc.
Mike Sterling, Esquire, Vandeventer Black, LLP

RFH/bmj
Payment Cut 10-14-99

DA0064

January 15, 1999
2:00 p.m.

Travelers Claims Address: 14048 Parkeast Circle, Chantilly, VA 20151-2225
ATTN: Mr. Bob Bolt, Bond Department
Bob Bolt
Chantilly, VA
1-800-442-5806
Ext. 6763

Bonding Company for C. D. Hayes, Inc., Fort Eustis Shopping Center project.

Talked to Bob Bolt and explained problems we've been having with getting our money from C. D. Hayes, Inc.; how they cut the October payment with backcharges and that we're now trying to get the November payment of $58,000 plus and that C. D. Hayes, Inc. said that they are not paying us anything on that billing and that we owe them $2.38. Also told Bob Bolt that the electrician and other subs had received their payments for November.

Informed Mr. Bolt that we have a meeting to discuss this with C. D. Hayes, Inc. at 9 a.m. Monday morning; told him that C. D. Hayes, Inc. is in default, and that if we don't get our money we are pulling our men off the job. Mr. Bolt said he would call Bob Rooks and talk to him about it and get back in touch with me this afternoon.

I previously talked with Bob Buckalew, our bondsman, this afternoon before calling Bob Bolt, and brought him up-to-date on the happenings on this job. Bob gave me Hayes' bonding company's representative and told me to call him and tell him that Hayes is in default and that we are pulling our men off the job if we don't get our money.

1/15/99 - 4:00 p.m.

Called Bob Bolt back and he said he talked to David Hayes and David told him there is a dispute as to how much they owe us. I told Mr. Bolt that they are in default, and according to our records they owe us the full amount, but that we were going to meet with them Monday morning and hopefully clear this up.

# MEMO TO FILE

1/14/00
8:30 a.m.
Re: Fort Eustis Shopping Center Expansion

John Drake called this morning to advise of a meeting that is being called by the Contracting Officer for the project on 1/24/00 at 2:00 p.m. at the jobsite. Among other things, John and I discussed the status of the backcharges against Lawson Mechanical, Inc. for the temporary trailers, cleanup, labor for cleanup, etc. that Doug Morris had told me a few weeks ago he and John were checking into. John said that they have a package prepared for the temporary trailers to present to the Government for reimbursement. John said that they have been through the invoices for all of the backcharges; that the backcharges for cleanup and labor for cleanup were bogus invoices by Bob Rooks. John said we are due a credit against all of our backcharges for temporary trailer use, cleanup, etc. John said all of it has been presented to David Hayes, but that David does not have the money to reimburse us. David did say, however, according to John, that when he gets the money for the buyout, he will reimburse the subcontractors for the backcharges.

January 17, 2000
9:50 a.m.
Memo to Fort Eustis Shopping Center Expansion File

Talked to Doug Morris today about status of his investigation into our backcharges. Doug said he has found bogus charges for cleanup and labor and that he will be issuing a credit for these backcharges. He said that some of the dumpster fees would have to be charged to us if in our contract we did not exclude them. I told Doug that even if we were responsible for some of them, the amounts we were charged were exorbitant as also were the 15% and 18% handling fees. Doug agreed with this. I asked Doug if we were getting a credit against the backcharge for the sprinkler work that was excluded from our contract. Doug said he saw the correspondence on this but he had no comment about returning the money to us on that. Doug said he presented all of this to David and told David he had talked to us and to the electrician. David told Doug that he does not have the money to pay us; Doug said he told David that we were backcharged, that they took the money and spent it, and now they owe us.

I asked Doug for copies of the credits we are due and he said he could give us copies of them on the Q.T. when he has them ready.

2/17/00 - approx. 9:45 a.m.

Talked to Doug Morris to follow up on change order credits. Doug said he doesn't yet have the total amount. Doug said he does know that on the dumpster fees we were responsible for a small portion but on the labor we had only about $500 to $520 and we charged amounts in the thousands.

LAWSON MECHANICAL, INC.

VA CONTRACTOR'S LICENSE 2705 035633A
NC CONTRACTOR'S LICENSE 14012

May 1, 2000

Mr. Paul Kelleher, C.P.M.
Contracting Officer
Construction and Equipment Division
P. O. Box 225887
Dallas, TX 75222-5887

Faxed to: 972-277-1684

Re: Fort Eustis Shopping Center Expansion
Newport News, Virginia
Contract No. 0310-96-007

Dear Mr. Kelleher:

We were notified this morning that C. D. Hayes, Inc. has filed bankruptcy and has pulled off this project.

This is to notify you that Lawson Mechanical, Inc. has not been paid for our March payment application. We understand that C. D. Hayes, Inc. received the payment for March on April 13, 2000, but we have not been paid from those funds. The balance due to Lawson Mechanical, Inc., including retainage, is quite large. We have also been backcharged over $30,000.00, by C. D. Hayes, Inc. for charges we were not responsible for.

We are asking that we be included in any meeting with AAFES and the Travelers Insurance and Indemnity Company (Hayes' bonding company) in order that we be properly informed and involved in the completion of this project.

Please let me hear from you as soon as possible.

Sincerely,

LAWSON MECHANICAL, INC.

John F. Lawson, Jr.
President

cc faxed to: Mr. Jim Bailey - 887-3291
Mr. Bob Boldt - Travelers - 703-222-1386
Mr. Bob Buckalew - Taylor Johnson Group - 468-0610

4013 A-4 Seaboard Court • P.O. 701-0346 • (757) 465-9377 • Fax (757) 465-9718



Orig - O.K. 1 May

May 30, 2000
8:40 a.m.
Memo to File: Fort Eustis Shopping Center Expansion

Jim Bailey called in response to my phone call to Paul Kelleher inquiring about RFP#106 and the check in the amount of $36,465.35 that we received on May 26th, so I would know how to apply the check: what amount to backcharges and what amount to progress payments through March. Mr. Bailey said the check has nothing to do with payment applications and is payment entirely for backcharges associated with the temporary trailers, storage fees, generator and whatever else was backcharged against us for vendor spaces. Mr. Bailey said they went through all of Hayes' files regarding backcharges against 5 subcontractors for the temporary trailer fees, etc. as stated above, and they have reimbursed each of us for those charges which we should not have been held responsible for by Hayes. Mr. Bailey said if we have any other backcharges we will have to deal with David Hayes about those because this payment has to do only with the vendor spaces backcharges.

As to payment for the payment applications for Mach and April, Mr. Bailey said April's application was just submitted last week to AAFES because David Hayes kept putting it off and didn't know whether he wanted to do it, but Mr. Bailey got Doug Morris to prepare it. He said they are waiting to hear from the bonding company as to whether or not they can release these payments to the subcontractors. I told Mr. Bailey to please note on the April application that the total amount due to us for March and April is $23,427.20. Mr. Bailey said he saw that and has it noted. ~~I also mentioned to Mr. Bailey our concern about receiving the balance of our contract payment as the job nears completion due to Hayes having billed and been paid for more than we have billed due to his telling us over the job about cuts by Mr. Bailey which in fact Mr. Bailey did not make.~~ Mr. Bailey said he understands and urged us to file our claim with the bonding company today!

July 10, 2000

Travelers Casualty & Safety Company of America
Attention: Bob Boldt,
Manager, Surety

RE: Principal: C.D. Hayes, Inc.
Obligee: AAFES
Bond Number 58Sb101133788BMC
Claim Number 053SC676460RG
Expand Fort Eustis Exchange
VCSI Contract Number C-1066

When you review this project in it's entirety, the contract completion date allowed ample time for the various trades to complete their work in a timely manner. What the general contractor failed to do was plan the project and provide qualified personnel to bring the project to a successful conclusion.

Because the general contractor failed to properly manage the project, jobsite meetings became adversarial in nature. The sub-contractors could not do their work in a timely and efficient manner because of incomplete and inaccurate work that preceded their operations. The general contractor refused to acknowledge these problems, but instead, attempted to convince the owner that the cub-contractors were not adequately manning the project. No matter how hard the sub-contractors voiced these problems, they were ignored. The general contractor was not paying the sub-contractors for work performed. The general contractor was not paying the sub-contractors for additional costs incurred due to errors and poor quality work performed by the general contractor in a timely manner. The general contractor was back-charging the subs and with-holding money for costs that the general contractor created ~~of~~ or were unfounded. Changes in jobsite superintendents and project management by the general contractor is indicative of this poor performance by the general contractor, that the sub-contractors did not stop work on this project when the general contractor did not live up to his contractual obligations is indicative of their commitment to complete their work in spite of the adversity created by the general contractor.

If you have any questions or I can be of further assistance, please do not hesitate to call.

VIRGINIA-CAROLINA STEEL, INC.

Sidney A. Martin, Jr.

Sidney A. Martin, Jr.
President

SAMJR:ta

7/23/99

Sid - I have been thru the file & pulled all that I can find. We do not have copies of CDHayes' backcharges #'s 7, 8 & 9. I've done an analysis - attached. We are very far apart in what we say our contract & co's are & what CD Hayes says we are. We also have not billed for 100% of contract at this point. Please look this over & let me know

PAYMENT HISTORY

CONTRACTOR: C.D. HAYES, INC.

PROJECT: FT. EUSTIS SHOPPING CENTER
OUR JOB NO. C-1066

| INV NO. | INVOICE DATE | INVOICE AMOUNT | 0.10 RETAINAGE | AMOUNT DUE | PAYMENT DUE DATE | DATE PAYMENT RECEIVED | PAYMENT AMOUNT | BALANCE DUE | DAYS PAST DUE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 4/24/98 | 30,637.00 | 3,063.70 | 27,573.30 | 5/24/98 | 7/22/98 | 27,753.30 | (180.00) | 59 |
| 2 | 5/21/98 | 151,246.00 | 15,124.60 | 136,121.40 | 6/20/98 | 7/22/98 | 68,060.70 | | 31 |
| | | | | | 6/20/98 | 9/3/98 | 68,060.70 | 0.00 | 73 |
| 3 | 6/23/98 | 31,737.00 | 3,173.70 | 28,563.30 | 7/23/98 | 10/6/98 | 28,563.30 | 0.00 | 73 |
| 4 | 7/21/98 | 96,668.00 | 9,666.80 | 87,001.20 | 8/21/98 | 10/6/98 | 44,000.00 | | 48 |
| | | | | | 8/21/98 | 10/23/98 | 41,805.00 | 1,196.20 | 66 |
| *5 | 8/21/98 | 4,065.00 | 406.50 | 3,658.50 | 9/20/98 | | | 3,658.50 | 312 |
| 6 | 9/22/98 | 59,855.00 | 5,985.50 | 53,869.50 | 10/23/98 | 11/17/98 | 46,675.10 | 7,194.40 | 25 |
| 7 | 1/22/99 | 11,766.00 | 1,176.60 | 10,589.40 | 2/22/99 | | | 10,589.40 | 157 |
| 8 | 3/23/99 | 14,962.00 | 1,496.20 | 13,465.80 | 4/22/99 | 6/1/99 | 13,465.80 | 0.00 | 40 |
| 9 | 6/23/99 | 22,051.00 | 2,205.10 | 19,845.90 | 7/23/99 | | | 19,845.90 | 4 |
| | | | | | | | | | AVG. |
| TOTALS | | 422,987.00 | 42,298.70 | 380,688.30 | | | 338,383.90 | 42,304.40 | 80.7273 |

* NON-EXECUTED CHANGE ORDER

TOTAL AMOUNT DUE: 84,603.10

VIRGINIA-CAROLINA STEEL, INC.
*Steel and Aluminum Fabricators*

*Telephone (757) 853-7403*
*Fax: (757) 853-1467*
*Plant: 2411 Ingleside Road*
*Mail: P.O. Box 7128*
*Norfolk, Virginia 23509*

October 9, 1998

James A. Bailey, Jr.
Contract Administrator
Kendrick David Dowling Architects, Inc.
Field Office - AAFES - Building 1386 - Trailer A
Fort Eustis, VA 23604

Re: C.D. Hayes, General Contractor
Expand Fort Eustis Shopping Center
Our Job No. C-1066

Dear Mr. Bailey:

Attached is a breakdown of the amounts invoiced to date on the above referenced job. The attached schedule also shows the payment history to date.

If you have any questions, please feel free to call me.

Sincerely,

Sidney A. Martin, Jr.
President

SAMJR:cb

Enclosure: Schedule of invoices & payments for C1066

VIRGINIA-CAROLINA STEEL, INC.
EXPAND FORT EUSTIS SHOPPING CENTER
INVOICE & PAYMENT HISTORY AS OF OCTOBER 9, 1998:

OUR JOB NO. C-1066
C.D. HAYES, GENERAL CONTRACTOR

| INVOICE DATE | MATERIAL | LABOR | INVOICE TOTAL | DATE PAID | AMOUNT | DAYS PAST 30 | BALANCE |
|---|---|---|---|---|---|---|---|
| 61 04/24/98 | 28,199.00 | 2,438.00 | 30,637.00 | 07/22/98 | 27,753.30 | 59 | 2,883.70 |
| 62 05/21/98 | 145,404.00 | 5,842.00 | 151,246.00 | 07/22/98 | 68,060.70 | 31 | |
| | | | | 09/03/98 | 68,060.70 | 73 | 15,124.60 |
| 63 06/23/98 | 25,322.00 | 6,415.00 | 31,737.00 | 10/06/98 | 28,563.30 | 73 | 3,173.70 |
| 64 07/21/98 | 84,742.00 | 11,926.00 | 96,668.00 | 10/06/98 | 44,000.00 | 48 | ~~52,668.00~~ |
| | | | | 10/23/98 | 41805.00 | 66 | 10863.00 |
| 05 08/21/98 | | 4,065.00 | 4,065.00 | | | 18 | 4,065.00 |
| 66 09/22/98 | 31,077.00 | 28,778.00 | 59,855.00 | 11/12/99 | 46625.10 | ~~CURRENT~~ 27 | 13129.90 ~~59,855.00~~ |
| TOTALS | 314,744.00 | 59,464.00 | 374,208.00 | | 236,438.00 | | 137,770.00 |
| 07 1/22/99 | | | 11766.00 | | | | |
| 08 3/23/99 | | | 14962.00 | 6/1 | 13465.80 | 70 | 1496.20 |
| 09 6/23/99 | | | 22051.00 | | | | |

[illegible] [illegible]

AAFES
P. O. Box 225887, Dallas, TX 75222-5887

PZ-C (DE)
Contract No. HQ 97- PZC-094. Expand Shopping Center,
Ft. Eustis, VA – Project No. 0310-96-007

JUN 23 2000

C.D. Hayes, Inc.
ATTN: C. David Hayes
400 A South Road St.
Elizabeth City, NC 27906

Dear Mr. Hayes,

Reference is made to Construction Contract Number HQ 97-PZC-094 between C.D. Hayes, Inc, and the Army & Air Forces Exchange Service for Project No. 0310-96-007, Expand Shopping Center, Ft. Eustis, VA, to the show cause letter to you of 8 June, 2000, and your response dated 16 June, 2000.

You were afforded the opportunity to show that your failure to comply with the contract terms was beyond your control and without your fault or negligence. I have received your letter of 16 June 2000, and have determined that it fails to establish that your contract violations were beyond your control and were not the result of your fault or negligence.

Under the provisions of Clause Number 41, Defaults, Exhibit A, General Provisions, the contract, and your right to proceed, is hereby terminated for default effective at the close of business 26 June, 2000. Specifically:

A You have failed to comply with the contracting officer's letter of 26 May 2000 and did not provide sufficient work forces by the 5 June 2000 deadline. During the period, 1 May 2000, through 23 June, the workforce on the site has averaged 1.65 C.D. Hayes personnel (including project superintendent) and 0.48 subcontractor personnel. You have effectively abandoned the project.

B You have repeatedly refused to man the work site and prosecute the work with such diligence as to ensure its completion within the dates specified by your recovery plans dated 16 Jun 1998, 25 Jul 1998, and 29 Apr 1999.

You are hereby put on notice that effective with this termination, AAFES will secure the work area, inventory remaining equipment items and building materials, and document the status and condition of the work site. You should coordinate the removal of any property, equipment, building materials, and supplies belonging to you, with the contracting officer prior to their disbursement. Pay all fees, charges, or invoices due to AAFES. Surrender all installation passes for yourself and your employees to the installation provost offices.

Under General Provision Number 40, DISPUTES, you may appeal this final decision of the contracting officer to either the Armed Services Board of Contract Appeals (ASBCA) within 90 days of the date of your receipt of the decision, or to the United States Court of Federal Claims within 12 months of the date of your receipt of the decision. If, for any reason, it is later determined that you were not in default under the provisions of General Provision Number 41, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to the "Termination for Convenience of AAFES" clause of the contract.

Sincerely,

VIRGIL L DeArmond, Lt. Col, USAF
Contracting Officer
(972) 277-1676

cf.: Mr. Bob Boldt, Travelers

C. D. HAYES, Inc.
General Contracting
Construction Management & Consultant Services

AAFES PZ-C (DE)
P.O. Box 225887
Dallas, TX 75222-5887

September 29, 2000

Re: Claim of C.D. Hayes, Inc.
Contract No. HQ 97-PZC-094
Project No. 0310-96-007
Ft. Eustis, VA

**CERTIFIED MAIL**

Gentlemen:

Pursuant to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601 et seq.), C.D. Hayes, Inc. hereby submits this demand for a Contracting Officer's Final Decision on this claim that the wrongful termination for default of this contract be converted to a termination for the convenience of the Government with resulting payment to C.D. Hayes, Inc. of all costs recoverable on the termination for convenience. The basis of this claim is as follows:

On December 1997, C.D. Hayes, Inc. was awarded contract No. HQ97-PZC-094 in the original amount of $5,769,405.00 and with an original contract completion date of 27 May 1999. Through Modifications to the contract, the contract amount has increased to 6,369,939.00 and the contract completion date has only been extended through 19 July 1999.

By letter dated 23 June 2000, the Contracting Officer wrongfully terminated this contract for default. In issuing this termination, the Contracting Officer ignored or refused to consider the numerous causes for delay on the contract that were not due to the fault or negligence of C.D. Hayes, Inc. These delays should have resulted compensable time extensions to the contract to extend the contract completion date and provide C. D. Hayes, Inc. with additional compensation. By issuing the termination for default in ignorance of these numerous compensable delays, the Contracting Officer acted wrongfully and the termination for default should be converted to a termination for the convenience of the Government.

**I. Reasons why the termination for default was wrongful:**

C.D. Hayes, Inc. is entitled to compensable time extensions on this contract for the causes and in the number of days and dollars indicated below:

**1. Government failure to issue change orders for extra work:** 425 days and $49,506.00 of outstanding RFPs.



1009 Executive Boulevard, Suite 100
P.O. Box 2241, Chesapeake, Virginia 23327-2241
Phone: 757-547-5575 • Fax: 757-547-3474

During the course of contract performance, C.D. Hayes, Inc. was forced to perform over 114 separate change orders for additional work on this contract. Each of these items of extra work or delay were not required by the original contract and C. D. Hayes, Inc. is entitled to a time extension and additional compensation for each of these changed conditions.

Each of the changed conditions were immediately brought to the attention of the Contracting Officer in a request for time extension and additional compensation. Instead of acting as required by the contract to issue a change order for these changed conditions, the contracting officer breached the contract and defaulted in the performance of his duties by failing and refusing to issue the necessary change orders with appropriate time extensions for these instances of extra work and delays.

Award of a change order for each of these conditions would result in a contract price increase of **$ 600,534.00** and a contract time extension of **425 days.** Had the contract time been adjusted the completion date would have been September 15, 2000 and the project could have been completed on time.

2. **Government's tardy to respond to RFI's- 268 days.**

During the course of contract performance, C.D. Hayes, Inc. discovered numerous instances where the Government's plans and specifications were defective. On each occasion, C.D. Hayes, Inc. was forced to seek direction as to how to proceed to overcome the defective plans and specifications through issuance of RFI's. There were at least 134 RFIs on the project. In many instances, rather than promptly respond to the RFI's the Government would usually fail to acknowledge the defective plans and specifications or fail to timely provide C. D. Hayes, Inc. with direction as to the method to overcome the defective plans and specifications. As a result, C. D. Hayes, Inc. was delayed from performing work on the contract for a minimum of 268 days due to the Government's failure to provide timely direction to overcome defects in the Government's plans and specifications. The logistics of getting responses from an architect in Florida and subsequent approval from the Contracting Officer in AAFES headquarters in Dallas, TX always took a minimum of two days per RFI, and in many instances longer.

3. **Hostile and over zealous Contract Administrator**

The government delegated the architectural firm of Kendrick, David, Dowling, Architects, Inc. to act as the COR. The architect, at the request of the government placed a Contract Administrator on the job site, who we feel acted wrongfully in superceding his designated authority. Throughout the contract, the Contract Administrator repeatedly broke the chain of command with a revolving door policy with subcontractors on the project, thus undermining the general contractor's ability to manage the project. He manipulated pricing of certain change orders with subcontractors without the presence of the general contractor. Furthermore, the Contract Administrator made many statements to numerous subcontractors that he personality was going to see that C. D. Hayes was going to be put out of business and he was going to use all his resources to do just that. The actions of the Contract Administrator and the government has destroyed this business as pledged. This contractor and its subcontractors were continually faced with many threats by the Contract Administrator that there would be a "blood bath," termination of our contract, penalties, etc. if we

persisted in our demands for time extensions and many of the RFPs. In many instances the Contract Administrator refused to issue RFP numbers by presuming the position of the Contracting Officer.

### 4. Weather Delays

The Contracting Officer failed to process legitimate requests for time extensions due to weather related delays totaling a minimum of 67 days.

### 5. Contract Completion Status

In addition, the contract was terminated for default at a time when the project was at 95% completion even without the compensable time extensions to which C.D. Hayes, Inc. is entitled. Termination of this contract for default at 95% completion is also wrongful. C.D. Hayes, Inc. was ready and able to complete the contract within **3 months** and had the assembled manpower and equipment necessary to complete the contract.

It is quite evident that this termination was done for the convenience Government based on the fact that the government chose to terminate the contract rather than fairly address no less than three outstanding RFPs, number 110, 111, and 113 and two RFIs, number 133 and 134, enclosed as Exhibit A.

AAFES will not be able to complete the contract any sooner through the termination for default. In fact, the re-procurement process will delay completion beyond the date that C.D. Hayes, Inc. could have completed the contract but for the termination for default. Therefore, the default termination will result in this contract being completed at a later date than if the contracting officer had allowed C.D. Hayes, Inc. to continue with performance.

## II. Calculation of termination for convenience recovery

A termination for convenience, in effect, converts a fixed-price contract to a cost reimbursement contract. The contractor is entitled to recover all of its costs incurred on the project, plus overhead and profit, less the amount received in payment prior to the termination.

Based on these general rules, C.D. Hayes, Inc. calculates its termination for convenience costs recovery as follows:

| | |
|---|---|
| 1. Total amount for labor, equipment, materials subcontract costs and all other expenses on contract. | **$5,615,470.98** |
| 2. Overhead (15%) | **$ 842,320.65** |
| 3. Profit (10)% | **$ 561,547.10** |

| | |
|---|---|
| 4. Bond (1%) | $ **70,193.39** |
| 5. Total payments under the contract | $**<u>5,487,035.00</u>** |
| 6. Total due C. D. Hayes, Inc. | **$1,602,497.12** |

Based on the foregoing, C.D. Hayes, Inc. demands issuance of a Contracting Officer's final decision on this claim for conversion of the wrongful termination for default to a termination for the convenience of the Government and payment of **<u>$1,602,497.12</u>** in termination for convenience cost.

**C. D. Hayes, Inc.**

C. David Hayes
President

cc: Outland, Grey, O'Keef & Hubbard - David Hearne, Esq.

**CERTIFICATION**

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflect the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

C. David Hayes
President

**CHANGE ORDER**

CHANGE ORDER #:

**SECTION I**

| | |
|---|---|
| TO: AAFES<br>tn: Paul M. Kelleher, PZ-C<br>P.0. BOX 225887<br>Dallas, TX 75222-5887 | FROM: C. D. Hayes, Inc.<br>1009 Executive Blvd., Suite 100<br>Chesapeake, VA 23327-2241 |
| CONTRACT #: HQ 97-PZC-094 | PROJECT #: 0310-96-007 |

PROJECT NAME/LOCATION: **Expand Shopping Center/Ft. Eustis, VA**

DESCRIPTION OF CHANGE: (Be complete and detailed. Attach necessary information)

*Installation of temporary circuits for the A5 area lighting.*

*We reserve our rights to place a claim for an adjustment to the contract completion date as a result of the impact of this RFP.*
*See attached proposal and calculations.*

REASON FOR CHANGE: (Examples: Changed condition, unforeseen conditions, design deficiency, AFFES, GC, SUB, etc.)

*Change requested per RFP # 113*

COST PROPOSAL FOR CHANGE: (Attach detailed/itemized breakdown)

| | | | |
|---|---|---|---|
| a. | Sub-Contractor/Other | $ | 2,610.00 |
| b. | General Contractor | $ | 208.00 |
| c. | Total | $ | 2,818.00 |

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| John W. Drake/Project Admin | [signature] | 4/21/00 |

**SECTION II CONTRACTING OFFICER REPRESENTATIVE ACTION**

**A-E Firm or AAFES EN Project Manager**

___ THE CHANGE IS NOT ACCEPTABLE SEE SECTION IV ON REVERSE.

___ THE CHANGE EXCEEDS MY AUTHORITY. SEE SECTION III BELOW. RECOMMEND ACCEPTANCE BASED ON THE ATTACHED COST ANAIYSIS

___ THE CHANGE IS APPROVED. FUNDS ARE AVAILABLE. IT IS WITHIN MY DESIGNATED AUTHORITY AND THE CONTRACTOR IS HEREBY DIRECTED TO IMPLEMENT THE CHANGE.

PRICES AND QUANTITIES ARE FAIR AND REASONABLE.

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| | | |

**SECTION III CONTRACTING OFFICER ACTION**

___ THE CHANGE IS APPROVED AND THE CONTRACTOR IS DIRECTED TO IMPLEMENT THE CHANGE

THE CHANGE IS NOT APPROVED. SEE SECTION IV ON REVERSE

| CONTRACTING OFFICER/NAME | SIGNATURE | DATE |
|---|---|---|
| | | |

21 April 2000

## Expand Shopping Center - Ft. Eustis

**RFP #113 - Itemized Backup**
(The installation of temporary circuits)

| Cost | Item |
|---|---|
| $2610 | Cost to install temporary circuits for the A5 area. |
| 208 | General Contractor's Commission 8% |
| *$2818* | *Total cost* |

*** CHANGE ORDER ***

CHANGE ORDER #:

SECTION I

| TO: AAFES<br>tn: Paul M. Kellener, PZ-C<br>.0. BOX 225887<br>Dallas. TX 75222-5887 | FROM: C. D. Hayes, Inc.<br>1009 Executive Blvd., Suite 100<br>Chesapeake, VA 23327-2241 |
|---|---|
| CONTRACT #: HQ 97-PZC-094 | PROJECT #: 0310-96-007 |

PROJECT NAME/LOCATION: Expand Shopping Center/Ft. Eustis, VA

DESCRIPTION OF CHANGE: (Be complete and detailed. Attach necessary information)

*Labor and matieral for the Installation of footings not shown on drawings*

*After reviewing the daily reports we are requesting a 16 day time extension with this RFP.*

*See attached proposal and calculations.*

REASON FOR CHANGE: (Examples: Changed condition, unforeseen conditions, design deficiency, AFFES, GC, SUB, etc.)

*Change requested per RFP # 111*

COST PROPOSAL FOR CHANGE: (Attach detailed/itemized breakdown)

| | | | |
|---|---|---|---|
| a. | Sub-Contractor/Other | $ | 0.00 |
| b. | General Contractor | $ | 20,659.00 |
| c. | Total | $ | 20,659.00 |

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| John W. Drake/Project Admin | John W. Drake | 3/16/00 |

SECTION II CONTRACTING OFFICER REPRESENTATIVE ACTION

A-E Firm or AAFES EN Project Manager

___ THE CHANGE IS NOT ACCEPTABLE SEE SECTION IV ON REVERSE.

___ THE CHANGE EXCEEDS MY AUTHORITY. SEE SECTION III BELOW. RECOMMEND ACCEPTANCE BASED ON THE ATTACHED COST ANAlYSIS

___ THE CHANGE IS APPROVED. FUNDS ARE AVAILABLE. IT IS WITHIN MY DESIGNATED AUTHORITY AND THE CONTRACTOR IS HEREBY DIRECTED TO IMPLEMENT THE CHANGE.

PRICES AND QUANTITIES ARE FAIR AND REASONABLE.

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| | | |

SECTION III CONTRACTING OFFICER ACTION

___ THE CHANGE IS APPROVED AND THE CONTRACTOR IS DIRECTED TO IMPLEMENT THE CHANGE

___ THE CHANGE IS NOT APPROVED. SEE SECTION IV ON REVERSE

| CONTRACTING OFFICER/NAME | SIGNATURE | DATE |
|---|---|---|
| | | |

AAFES FORM 4400-8 (MAY 90) LRA

14 March 2000

**Expand Shopping Center - Fort Eustis**

RFP#111 - Itemized Breakdown

| Cost | Item |
| --- | --- |
| $ 6,290 | Removal of spoils 74 c.y. @ $85 p.c.y. |
| 11,100 | Pouring of footings 74 s.f. @ $150 p.c.y. |
| 17,390 | subtotal |
| 1,739 | General Contractor's Overhead @ 10% |
| 19,129 | subtotal |
| 1,530 | General Contractor's Profit @ 8% |
| *$20,659* | *Total Cost to Pour footings and removal of spoils* |

CHANGE ORDER

CHANGE ORDER #:

SECTION I

| | |
|---|---|
| TO: AAFES<br>Attn: Paul M. Kelleher, PZ-C<br>P.O. BOX 225887<br>Dallas, TX 75222-5887 | FROM: **C. D. Hayes, Inc.**<br>1009 Executive Blvd., Suite 100<br>Chesapeake, VA 23327-2241 |
| **CONTRACT #: HQ 97-PZC-094** | **PROJECT #: 0310-96-007** |

**PROJECT NAME/LOCATION:** **Expand Shopping Center/Ft. Eustis, VA**

**DESCRIPTION OF CHANGE:** (Be complete and detailed. Attach necessary information)

*First order of shade cloth sent to us as per Spec section 2.03 F 6 which states the color is Deep sea blue. Color was change by the architect Jeff Fuller.*

*See attached proposal and calculations.*

**REASON FOR CHANGE:** (Examples: Changed condition, unforeseen conditions, design deficiency, AFFES, GC, SUB, etc.)

*Change requested per RFP # 110*

**COST PROPOSAL FOR CHANGE:** (Attach detailed/itemized breakdown)

| | | | |
|---|---|---|---|
| a. | Sub-Contractor/Other | $ | 0.00 |
| b. | General Contractor | $ | 6,029.00 |
| c. | Total | $ | 6,029.00 |

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| John W. Drake/Project Admin | [signature] | 3/30/00 |

SECTION II CONTRACTING OFFICER REPRESENTATIVE ACTION

**A-E Firm of AAFES EN Project Manager**

__ THE CHANGE IS NOT ACCEPTABLE SEE SECTION IV ON REVERSE.

__ THE CHANGE EXCEEDS MY AUTHORITY. SEE SECTION III BELOW RECOMMEND ACCEPTANCE BASED ON THE ATTACHED COST ANALYSIS

__ THE CHANGE IS APPROVED. FUNDS ARE AVAILABLE. IT IS WITHIN MY DESIGNATED AUTHORITY AND THE CONTRACTOR IS HEREBY DIRECTED TO IMPLEMENT THE CHANGE.

PRICES AND QUANTITIES ARE FAIR AND REASONABLE.

| NAME/TITLE | SIGNATURE | DATE |
|---|---|---|
| | | |

SECTION III CONTRACTING OFFICER ACTION

__ THE CHANGE IS APPROVED AND THE CONTRACTOR IS DIRECTED TO IMPLEMENT THE CHANGE

THE CHANGE IS NOT APPROVED. SEE SECTION IV ON REVERSE

| CONTRACTING OFFICER/NAME | SIGNATURE | DATE |
|---|---|---|
| | | |

## Expand Shopping Center - Ft. Eustis

**RFP #110 - Itemized Backup**
(Shade cloth return )

| Cost | Item |
|---|---|
| $5,583 | Cost to return the shade cloth that was custom made for this project |
| 446 | General Contractor's Commission 8% |
| ***$6,029*** | ***Total cost*** |

C. D. Hayes, Inc.
*P.O. Box 2241*
*Chesapeake, VA 23327*
*Phone: (757) 547-5575 Fax: (757) 547-3474*

REQUEST FOR INFORMATION

To: **Kendrick, David, Dowling Architects, Inc.**
111 Ferry Road S.E.
Fort Walton Beach, FL 32548-5535

Attn: **Jim Bailey**
Fax: **( on site )**

Project: **Expand Shopping Center**
**Ft. Eustis, VA**

Contract No. HQ97-PZC-094
R.F.I. No. 134

In reference to the above listed project, we are hereby requesting a clarification, determination and/or information regarding the following:

Spec. Section Number: **Various**

Drawing No. **D-3, D-3A And D-4**

**Between X3 and X4 on XB line there are three windows that are not shown to be removed by note 11 of the demo plans, but on A-4 it shows that the window opening get masonry infill.**

**Please advise.**

Requested by: **John W. Drake**
Title: Project Administrator

Date of Request: **31 May 00**
Reply Requested by: ____________

Note: Please furnish your reply and return two (2) copies to the originator. In reply to your request be advised:

Reply by: ____________
Title: ____________

Date of Reply: ____________
Date Reply Returned: ____________

C. D. Hayes, Inc.
*P.O. Box 2241*
*Chesapeake, VA 23327*
*Phone: (757) 547-5575 Fax: (757) 547-3474*

REQUEST FOR INFORMATION

To: Kendrick, David, Dowling Architects, Inc.
111 Ferry Road S.E.
Fort Walton Beach, FL 32548-5535

Attn: **Jim Bailey**
Fax: **( on site )**

Project: **Expand Shopping Center**
**Ft. Eustis, VA**

Contract No. HQ97-PZC-094
R.F.I. No. 133

In reference to the above listed project, we are hereby requesting a clarification, determination and/or information regarding the following:

Spec. Section Number: **Various**
Drawing No. **D-3 D-4**

**On demo sheet D-3 there are no floor finishes or wall finishes to be removed in the main retail space. Was this your intention.**

**Please advise.**

Requested by: **John W. Drake**
Title: Project Administrator
Date of Request: **31 May 00**
Reply Requested by: ________________

Note: Please furnish your reply and return two (2) copies to the originator. In reply to your request be advised:

Reply by: ________________
Title: ________________
Date of Reply: ________________
Date Reply Returned: ________________

# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| C.D. HAYES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-376C (Judge Baskir) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## DECLARATION OF JOHN J. ANCELLOTTI

In support of the United States' motion for summary judgment, pursuant to 28 U.S.C. § 1746, I, John J. Ancellotti, declare as follows:

1. I am a Special Agent-In-Charge for the Major Procurement Fraud Unit of the United States Army's Criminal Investigative Division ("CID").

2. I have 32 years of law enforcement experience and have been a CID special agent for over 5 years.

3. In 1999, I commenced an investigation of C.D. Hayes, Inc. ("C.D. Hayes") as a result of allegations by one of C.D. Hayes's subcontractors.

4. On October 8, 1999, I spoke to the President of C.D. Hayes, C. David Hayes. During that conversation, which was held in the presence of Mr. Hayes's then-attorney, David Hearne, I informed Mr. Hayes that the

Army was conducting a criminal fraud investigation of his company. At that time, I told Mr. Hayes that the investigation concerned C.D. Hayes's failure to make prompt payments to subcontractors and the making of false claims in connection with the Fort Eustis shopping center expansion project.

5. During the summer of 2000, as part of my investigation, I interviewed C.D. Hayes's former Vice President, Robert Douglas Morris, on two occasions.

6. The first interview of Mr. Morris took place on July 25, 2000, at the cafeteria of the U.S. Army Corps of Engineers, Norfolk District, at 9:20 a.m. The interview took place in an open area of the cafeteria with other patrons just tables away. Mr. Morris voluntarily met with me at this location because it was convenient to him.

7. Since the interview took place in a public location, and all my notes were handwritten, I told Mr. Morris that after I had typed up my notes I would like to get back with him so that he could review my notes and make any necessary changes. I advised Mr. Morris that I would contact him as soon as I had typed the interview notes. Mr. Morris agreed and said he would await my call.

8. On or about July 31, 2000, I contacted Mr. Morris and told him I had finished typing the interview notes from our meeting on July 25, 2000, and wanted to go over them with him. We agreed to meet on August 4, 2000, at the Naval Criminal Investigative Service ("NCIS") Fraud Office located in the Greenbrier office complex in Chesapeake, Virginia. This location was chosen because it was the most convenient for Mr. Morris.

9. On August 4, 2000, at 11:00 a.m., I met with Mr. Morris at the NCIS Fraud Office. Present during this interview was FBI Special Agent Christopher O'Donnell. I introduced Special Agent O'Donnell to Mr. Morris and advised him that Special Agent O'Donnell was present since the case I was investigating also fell within the investigative jurisdiction of the FBI. I again advised Mr. Morris that he was being interviewed as a witness in the False Claims case involving C.D. Hayes, that he was not in custody, and that could leave the NCIS office at any time.

10. I then asked Mr. Morris to read the eight pages of typed notes I had assembled from our interview of July 25, 2000. I asked Mr. Morris to make changes in his own handwriting, as appropriate, which he did. I initialed all changes made by Mr. Morris. Special Agent O'Donnell then recommended that the eight-page interview of Mr. Morris be consolidated

into one page. Special Agent O'Donnell typed up a one-page statement and Mr. Morris read the statement and voluntarily signed it. The statement was witnessed by Special Agent O'Donnell and myself at 12:12 p.m., on August 4, 2000. A true and correct copy of Mr. Morris's August 4, 2000 statement is attached as Exhibit A.

11. I never told Mr. Morris during either interview that he was subject to immediate arrest, given that I have no arrest authority. Nor did Special Agent O'Donnell tell Mr. Morris that he was subject to immediate arrest. Mr. Morris was not advised of his legal rights because the setting was that of an interview. It was non-custodial, voluntary, and Mr. Morris was free to leave at any time. Mr. Morris verbally stated he understood this. Additionally, the one page statement Mr. Morris signed acknowledged: "I have made this statement freely and voluntarily because I wish to cooperate fully and completely in this matter. No one has threatened me or made me any promises regarding my cooperation in this matter." After Mr. Morris reviewed and signed the one page statement, the interview ended and Mr. Morris left the NCIS office. The entire interview took less than 90 minutes.

12. As noted above, Mr. Morris reviewed both the eight pages of typed notes from our July 25, 2000 interview and the statement of August 4, 2000. Mr. Morris made changes to the July 25, 2000 interview notes, but did not chose to make any changes to the August 4, 2000 statement.

13. Special Agent O'Donnell's office never joined my investigation of this matter, leaving the primary investigative jurisdiction to Army CID.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 7th day of July 2004.

John J. Ancellotti

John J. Ancellotti

0012-00-CID 422-4578

**Signed statement of Robert Douglas Morris on August 4, 2000**

1. My name is Robert Douglas Morris, I reside at 20 Harbinger Ridge road, Harbinger, NC, 27941.
2. For the past 29 years I have worked in the construction business.
3. From approximately April 1997 I was employed by C.D. Hayes, Inc. (CDHI) as a vice president/project manager. CDHI is a general contractor that was employed by the United States Government to construct improvements to the Fort Eustis Main Post Exchange at Fort Eustis, Virginia.
4. During the course of my employment at CDHI as a vice president/project manager, I signed several documents on behalf of CDHI, including forms called "Application and Certification for Payment". On these forms I certified that work covered by the Application and Certification for Payment had been completed and that all amounts for work for which previous Certificates for Payment were issued (i.e., work performed by subcontractors on the project) had been paid. In particular, the Application and Certification for Payment forms I signed included those I dated 08/04/99; 09/09/99; and 11/09/99.
5. At the time I made the certifications on these forms I knew that CDHI had not really paid all of the subcontractors the amounts they were due; due to back charges, disputes, or not being paid in a timely manner. Accordingly, the certifications I made on these forms were false and I knew that at the time.
6. I had, in fact, called the falsity of the certifications we were making to the attention of my superior at CDHI, C. David Hayes, president of CDHI, on more than one occasion. I was essentially told by him not to worry about such matters because that was how CDHI routinely conducted its business. Hayes further explained that he would usually authorize payment to a subcontractor when he needed some immediate future work from the subcontractor. Subcontractors whose services were no longer needed in the immediate future would have to wait, perhaps indefinitely, for payment.

I have made this statement freely and voluntarily because I wish to cooperate fully and completely in this matter. No one has threatened me or made me any promises regarding my cooperation in this matter.

Signed

Robert Douglas Morris

Witnessed by:

Christopher O'Donnell, FBI, 08/04/2000 12:12 PM

Ancellotti, USACIDC, 08/04/2000 12:12 pm

DA0094

Exhibit #2