# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| C.D. HAYES, INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 01-376C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF PAUL KELLEHER

Pursuant to 28 U.S.C. § 1746, I, Paul Kelleher, hereby testify and declare as follows:

1. I was the Army & Air Force Exchange Service ("AAFES") contracting officer during a project to expand the shopping center at Fort Eustis, Virginia. I was involved with the project during the solicitation phase in late 1997 through May 2000, at which time I assumed another position with AAFES.

2. The final amendment that I executed (amendment no. 36) was executed on May 15, 2000, and changed the contract amount to $6,365,290.00. This represented a total increase of approximately 9.4% over the original contract amount and was in line with the construction industry average.

3. There were 35 amendments executed by AAFES for this contract (amendment no. 34 was not signed) covering approximately 100 change orders. During my 35 year career with AAFES, I handled numerous construction projects. Expansions, such as the one at Fort Eustis, are very complex. Based on my experience, the number of change orders for this project is not excessive and does not reflect a poor design.

4. The checklist that I used for the December 3, 1997 preconstruction conference reflects that C.D. Hayes, Inc. ("C.D. Hayes") was to begin construction "NO LATER THAN: Mid January 1998." The notice-to-proceed issued to C.D. Hayes on December 3, 1997, required them to commence work within 10 days. These documents are consistent in that the general contractor is first tasked with mobilizing his forces (e.g., negotiating and finalizing contracts with subcontractors and suppliers, and arranging for delivery of equipment to the site), which would take several weeks of the contract's 540-day term. I recall these matters being discussed at the December 3, 1997 preconstruction conference. C.D. Hayes was not directed to delay mobilization until January 1998.

5. We were not able to use the schedules that were provided to AAFES by C.D. Hayes for the reasons stated in my 8 March 1999 letter to

C.D. Hayes. A true and correct copy of my 8 March 1999 letter is attached as Exhibit A.

6. The failure of C.D. Hayes to provide a usable schedule made managing the project more difficult. We suggested that C.D. Hayes use, and furnished for its use, other project management software. However, at no time did AAFES change the contract's scheduling requirements.

7. Once change orders requests were properly completed and documented by C.D. Hayes, they were handled in a timely manner and executed as contract amendments.

8. During the course of the project, AAFES allowed C.D. Hayes to bill for completed work prior to final execution of a contract amendment. It was subsequently discovered that C.D. Hayes was attempting to bill for partially completed work and work that had not yet been commenced. In order to regain control of the situation, we began requiring that contract amendments be finalized before payments were made.

9. Monthly pay applications, which included the most recent change orders, were handled in a timely manner by AAFES. Upon obtaining from C.D. Hayes a proper invoice, as defined in the contract, AAFES

routinely processed pay applications within two weeks. This was substantially less than the 30 days allowed by the contract.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 16TH day of August , 2004.

PAUL M. KELLEHER

AAFES
P. O. Box 225887, Dallas, TX 75222-5887

PZ-C (KE)

8 MAR 1999

C.D. Hayes, Inc.
ATTN: Mr. David Hayes, President
1009 Executive Boulevard, Suite 100
Chesapeake, VA 23327-2241

Dear Mr. Hayes,

Reference the many letters and memorandums, plus the monthly progress meeting discussions regarding the progress schedule.

The current schedule still is not useful because the dates reflect a timeline beginning before contract award. Therefore, all subsequent dates reflect an inaccurate picture. For the purposes of this letter, I would have preferred to use your schedule, and one accepted by AAFES. However, since that is not possible, I have asked the A-E to develop one for reference and documentation purposes. It is not a replacement.

The attached schedule shows graphically where we; i.e., AAFES and our A-E, feel your firm stands today and the projected completion. Note that it shows a completion date of 6 Oct 99, which is 130 days after the contract end date.

On several occasions, you have asserted your intent to calculate and request extension due to change orders and weather. Since I have not received the specific requests to consider, I can only go by the facts as I know them, which tell me that the impact of these is minimal at best and they are offset by the documented significant shortage of manpower on the project. Notwithstanding these issues, I want to remind you of the recovery plan delivered to our representative on 27 March 98, and discussed at numerous progress meetings plus the daily manpower numbers provided to me. I also want to remind you of the option available to me, which is to implement Clause 32 of the General Provisions that gives the owner the right to require overtime and use of other resources to get the project back on track.

Sincerely,

PAUL M. KELLEHER
Contracting Officer
Construction and Equipment Division

Encl

cf: Bob Bernhard, AAFES, CME
Jim Kendrick, KDD
Jim Bailey, KDD

EXPAND SHOPPING CENTER
FT. EUSTIS, VA

KENDRICK DAVID DOWLING ARCHITECTS, INC.
CORP LIC AA0002284

PHASING/TIME SCHEDULE
CONTRACT & NOTICE TO PROCEED DATE - 3 DEC., 1997
March 5, 1999

| PHASE | CONSECUTIVE CALENDAR DAYS ALLOWED | START DATE | COMPLETION DATE | NOT INCLUDED |
|---|---|---|---|---|
| Phase I | 30 | 3 Dec., 97 | 1 Jan., 98 | Dec. 29 Days<br>Jan. 1 Day<br>30 |
| Phase II | 180 | 2 Jan., 98 | 30 Jun., 98 | Jan. 30<br>Feb. 28<br>Mar. 31<br>Apr. 30<br>May 31<br>Jun. 30<br>180 |
| Phase III | 90 | 1 Jul., 98 | 28 Sep., 98 | Jul. 31<br>Aug. 31<br>Sep. 28<br>90 |
| Phase IV | 90 | 29 Sep., 98 | 27 Dec., 98 | Sep. 2<br>Oct. 31<br>Nov. 30<br>Dec. 27<br>90 |
| Phase V | 90 | 28 Dec., 98 | 27 Mar., 99 | Dec. 4<br>Jan. 31<br>Feb. 28<br>Mar. 27<br>90 |
| Phase VI | 60 | 28 Mar., 99 | 26 May, 99 | Mar. 4<br>Apr. 30<br>May 26<br>60 |
| | 540 | | | 540 |

111 FERRY ROAD, S.E. • FORT WALTON BEACH, FL 32548-5535 • 850-243-9158 • Fax 850-664-2374
kddarch@emeraldcoast.com

EXPAND SHOPPING CENTER
FT. EUSTIS, VA
March 4, 1999

KENDRICK•DAVID•DOWLING ARCHITECTS, INC.

## Projected Construction Time for Completion

| Phase | Description of Work | Estimated Complete | Estimated Remaining | Estimated Calendar Days |
|---|---|---|---|---|
| I.1 | Primary & Secondary Staging | 100% | 0 | 0 |
| I.2 | Site Demolition/Drive & Parking Areas/Landscaping | 90% | 10% | 10 |
| I.3 | Temp. Access/Safety Barriers | 100% | 0 | 0 |
| I.4 | East Mechanical/Elect. | 95% | 5% | 5 |
| I.5 | Garden Shop/Punch List Items/Elec./Garden Cloth/Slab Adjustment | 95% | 5% | 5 |
| I.6 | Barrier Fencing/Signage | 100% | 0 | 0 |
| I.7 | Maintenance | 100% | 0 | 0 |
| II.1 | West Mall/Food Court/Ext. Work/Punch List | 95% | 5% | 5 |
| II.2 | West Temp. Entry Rework Entry Doors | 95% | 5% | 5 |
| II.3 | Remove Temp. Barriers/Entry Way Establish to Retail Area | 100% | 0 | 0 |
| II.4 | Barrier Fencing/Signage | 100% | 0 | 0 |
| II.5 | Maintain Egress | 100% | 0 | 0 |
| III.1 | East Portion Mall/Ext. Work | 75% | 25% | 30 |
| III.2 | Barrier Fencing/Signage | 100% | 0 | 0 |
| III.3 | Relocation Primary Entry | Incl. III.1 | - | - |
| III.4 | Maintain Egress | Incl. III.1 | - | - |



C:\WPDOCS\94\KDCOMPLETION TIME.wpd

## Projected Construction Time for Completion

| Phase | Description of Work | Estimated | | |
|---|---|---|---|---|
| | | Complete | Remaining | Calendar Days |
| IV.1 | Demo. 1384/Relocate Concessions/Service to Mall | 75% | 25% | 30 |
| IV.2 | Demolition 1384 | 100% | 0 | 0 |
| IV.3 | Barrier Fencing/Signage/Maintenance | 100% | 0 | 0 |
| V.1 | Construct New Retail/Admin. Areas | 0 | 100% | 90 |
| V.2 | MPA Area | 90% | 10% | 5 |
| V.3 | West Site Work | 0 | 100% | Incl. V.1 |
| V.4 | Barrier Fencing/Signage | 0 | 0 | Incl. V.1 |
| V.5 | Maintaining Egress | 0 | 0 | Incl. V.1 |
| VI.1 | Demo. Existing Admin. Area | 0 | 100% | 60 |
| VI.2 | See VI.1 | - | - | Incl. VI.1 |
| VI.3 | Remodel Exist. Retail Area | - | - | Incl. VI.1 |

C:\WPDOCS\...\COMPLETION TIME.wpd

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| C.D. HAYES, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 01-376C (Judge Baskir) |

## DECLARATION OF VIRGIL L DEARMOND

Pursuant to 28 U.S.C. § 1746, I, Virgil L DeArmond , hereby testify and declare as follows:

1. I was the Army & Air Force Exchange Service ("AAFES") contracting officer during a project to expand the shopping center at Fort Eustis, Virginia. I was involved with the project from May 2000 through the project completion.

2. At the time of CD Hayes' termination in June 2000, there was one pending change order that had been approved internally, but had not been executed into a formal contract amendment. This was change order number 97, in the amount of $4,649.00. Following the completion of the takeover agreement with the Surety, change order 97, was incorporated

into the contract by amendment number 37 in October 2000. Payment was subsequently provided to Surety.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _16th_ day of August, 2004.

VIRGIL L DEARMOND

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| C.D. HAYES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-376C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

The Plaintiff, C.D. Hayes, Inc., responds to the Defendant's second set of interrogatories as follows:

**INTERROGATORIES**

INTERROGATORY 1:

For each change to the contract (whether actual or constructive) upon which plaintiff bases its claim for an equitable adjustment, describe in detail the change that was ordered by AAFES including, but not limited to, the contract specifications that were changed, the date upon which the change was ordered, the identity of the individual who ordered the change, the identity of the individual to whom the order was directed, and whether the change was an actual change or constructive change.

Response:

Interrogatory #1 seeks detailed information regarding the various change orders mandated on this job by AAFES through Jim Bailey of KDD Architects, Inc. who served as the "COR". The actual and constructive change orders exceed 110 with the first 100 ± being initially received by Robert Rooks by C.D. Hayes, Inc. and reviewed by David Hayes and the latter ones being received by Doug Morris or John Drake and reviewed by David Hayes. The change orders, because of their volume were grouped in amendments numbered 1 through 36,

are shown and described by a document previously submitted which is attached hereto as Exhibit "A", entitled "Summary of Amendments". The total amount of days requested were 346 days and only 53 days were offered (once) in Amendment 34 which was offered, and rejected, for over $600,000 worth of previous change order work which had previously extended the work by over 150 days itself at the time of the proposed offer. Attached as Exhibit "B" you will find additional detail related to change orders and delays up through May 21, 1999, as calculated by the AAFES consultant, Hill International. AAFES has the original change orders.

In addition to the actual or proposed change orders, there were several constructive change orders. They included the following:

1. $10,000 in additional office labor required to convert the SureTrak schedule originally submitted by C.D. Hayes to a less sophisticated software package imposed by the dictates of Jim Bailey, MicroSoft Project. The software was not required by the contract, was less efficient than SureTrak, was not the way the schedule was originally setup or proposed and was only required as a personal whim of Jim Bailey. Additionally, AAFES, unbeknownst to C.D. Hayes initially, gave C.D. Hayes a "bootleg" copy of MicroSoft Project for its use which later failed to calculate and "make runs" after all the data was laboriously inputted.

2. Changes related RFPs 97, 110 and 111 totaling $31,337. RFP 97 was for GWB sheetrock changes for phase 2 in the amount of $4,649, RFP 110 was for Hendee canopy changes in phase 1 in the amount of $6,029 and RFP 111 was for concrete changes in phase 1 in the amount of $20,659. These changes were requested by C.D. Hayes to AAFES who never responded but still required the work to be done. C.D. Hayes submitted these RFPs directly to AAFES because

Jim Bailey simply ignored them and refused to send them forward.

3. RFI 107 which relates to RFP 67 was a constructive change order in that we were given direction to make changes to downspouts and were not issued a change order for the increased work and additional time necessitated, in the relatively small amount of approximately $300.

4. RFI 129 for additional reinforcement steel and concrete truck ramp required by AAFES without additional compensation or time in the relatively small of approximately $150.

5. RFI 133 and 134 for demolition in the last phase of the project in the amount of $7,819 ±.

6. The request for 425 days on September 29, 2000 which were denied, but the time was still needed.

INTERROGATORY 2:

For each change order identified in response to interrogatory number one, state the equitable adjustment that plaintiff contends that it is entitled to receive and describe in detail how the change caused any increases or decreases in the cost of performance of the contract.

Response:

See Cost of Change column in Exhibit "A" for item by item increases or decreases. In addition to the actual direct cost of performing the changes the sheer volume of the changes and the unresponsive nature of the government in responding to and processing the changes caused additional costs and disruption to the projects. Additionally, by refusing to grant time extensions for the numerous change orders directed by the government this forced a constructive acceleration of the project work schedule on to C.D. Hayes with the attendant increased cost and inefficiencies associated herewith. This constructive acceleration cost the

company approximately $200,000 in additional management overhead. For the costs associated with the constructive change orders see narrative relating thereto in #1 above.

INTERROGATORY 3:

For each constructive change identified in response to interrogatory number one, identify the written notice of the constructive change submitted to the contracting officer in accordance with paragraph 36(b) of the contract.

Response:

See subparagraphs 1 through 6 in Interrogatory #1.

INTERROGATORY 4:

For each change identified in response to interrogatory number one, identify the written statement submitted to the contracting officer setting forth the general nature and extent of the claim for equitable adjustment in accordance with paragraph 36(e) of the Contract.

Response:

The RFPs 1 through 106, and see letter dated September 29, 2000.

This the 22th day of January, 2007.

THE YARBOROUGH LAW FIRM, P.A.

GARRIS NEIL YARBOROUGH
Attorney for Plaintiff
PO Box 705
Fayetteville, NC 28302
(910) 433-4433

STATE OF NORTH CAROLINA

VERIFICATION

COUNTY OF CUMBERLAND

I, C.D. Hayes, being first duly sworn, say that I have read the foregoing Plaintiff's Responses to Defendant's Second Set of Interrogatories and know the contents thereof; that the same are true of my own personal knowledge, except as to those matters and things therein stated upon information and belief, and as to those, I believe them to be true to the best of my knowledge and information.

C.D. Hayes

Sworn and subscribed before me

this 29th day of January, 2007.

Notary Public

My Commission Expires: 9-20-2011

CERTIFICATE OF SERVICE

I hereby certify that a copy of the Plaintiff's Responses to the Defendant's Second Set of Interrogatories in the above-entitled action has been served upon Counsel for Defendant by depositing a copy thereof in the U.S. mail, first class postage prepaid, addressed as follows:

**David A. Harrington, Trial Attorney**
**Commercial Litigation Branch/Civil Litigation Division**
**Attn: Classification Unit**
**1100 L Street, NW, 8th Floor**
**Washington, DC 20530** + Via Fax

This the 24 day of January, 2007.

By: ______________________
GARRIS NEIL YARBOROUGH
Attorney at Law
P.O. Box 705
Fayetteville, NC 28302
(910) 433-4433

FEB-01-2007 12:43 THE YARBOROUGH LAW F...

**Expand Shopping Center**
**Fort Eustis, Virginia**
**Contract No. HQ 97-PZC-094**

## SUMMARY OF AMENDMENTS

| | Amend. No. | C.O. No. | Date | Description of Change | Cost of Change | Contract Amount | Time Extension | Completion Date |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 5,769,405.00 | | 27-May-99 |
| Bilateral | 1 (B) | N/A | 09-Feb-98 | Provide 10' x 40' Office | 9,159.00 | 5,778,564.00 | 0 | 27-May-99 |
| Bilateral | 2 | 03, 04 | 06-Mar-98 | Additional Site Demo | 4,582.68 | 5,783,146.68 | 0 | 27-May-99 |
| Bilateral | 3 | 06 | 29-Apr-98 | Staging Area Fence & Shade Cloth | 5,345.00 | 5,788,491.68 | 0 | 27-May-99 |
| Bilateral | 4 | 010 | 09-Apr-98 | Reroute Electrical Feed - Parking Lot | 2,330.00 | 5,790,821.68 | 0 | 27-May-99 |
| Bilateral | 5 | 011 | 12-May-98 | Window / Door Framing Color | 14,729.00 | 5,805,550.68 | 0 | 27-May-99 |
| Bilateral | 6 | 18, 22 | 15-Jun-98 | Phase 1 - Sprinkler Line too small & Unsuitable Soil Under C & G | 22,283.00 | 5,827,833.68 | 0 | 27-May-99 |
| Bilateral | 7 | 14 | 15-Jun-98 | Undercut Phase 1 Footings | 1,027.00 | 5,828,860.68 | 0 | 27-May-99 |
| Bilateral | 8 | 16 | 31-Jul-98 | Phase 5 - CMU Wall & Ftg Change 8/S9 | 0.00 | 5,828,860.68 | 0 | 27-May-99 |
| Bilateral | 9 | 9, 15, 19, 25, 35 | 14-Jul-98 | Undercut Subgrade - Phase 2 Pad | -2,140.00 | 5,826,720.68 | 0 | 27-May-99 |
| Bilateral | 10 | 32, 33 | 29-Jul-98 | Roof Drains - New Mech Room | 55,402.00 | 5,882,122.68 | 0 | 27-May-99 |
| Bilateral | 11 | 12, 20, 23, 24, 26, 27 | 03-Sep-98 | Remove Portion of Roof Overhang - Old ODL Room over New Mech/Elec | 599.00 | 5,882,721.68 | 0 | 27-May-99 |
| Bilateral | 12 | 38, 43 | 30-Oct-98 | Delete Signage - Change Roof Hatch | -393.00 | 5,882,328.68 | 0 | 27-May-99 |
| Bilateral | 13 | 46 | 05-Nov-98 | Install Switch Gear & Transformer @ PX for Dept. of Public Works | 40,748.00 | 5,923,076.68 | 0 | 27-May-99 |
| Protest | 14 | 40, 45, 57 | 31-Dec-98 | Tooth-In Brick & Mortor @ SE Corner of Existing MPA Veneer. Provide Continuous Expansion Joint | 8,107.00 | 5,931,183.68 | 0 | 27-May-99 |
| Protest | 15 | 39, 42, 44, 47 | 31-Dec-98 | Fluorescent Light Fixtures on Exterior Signage Add 8 Return Grilles in Main Retail | 8,502.00 | 5,939,685.68 | 0 | 27-May-99 |
| Protest | 16 | 48, 53, 54, 64, 65, 66 | 31-Dec-98 | Metal Studs, GWB, & Elect. Door Frames @ Anthony's Pizza & Robin Hood | 24,598.00 | 5,964,283.68 | 0 | 27-May-99 |
| Protest | 17 | 35, 56, 60, 68 | 04-Feb-99 | Electric Outlets @ Amusement and AAFES ATM Machines; Cabinets @ Work 191. | 10,068.00 | 5,974,351.68 | 0 | 27-May-99 |
| Protest | 18 | 69 | 04-Feb-99 | Change Sargent Locks to Best | 4,932.00 | 5,979,283.68 | 0 | 27-May-99 |

PLAINTIFF'S EXHIBIT 

ATTACH. 6, Page 1 of 3

DA0110A

Expand Shopping Center
Fort Eustis, Virginia
Contract No. HQ 97-PZC-094

## SUMMARY OF AMENDMENTS

| | Amend. No. | C.O. No. | Date | Description of Change | Cost of Change | Contract Amount | Time Extension | Completion Date |
|---|---|---|---|---|---|---|---|---|
| Protest | 19 | 07, 08, 58, 61, 63 | 19-Mar-99 | Delete Roving Concessions 197 & 198, Dry Cleaning 199, Vestibule 199A, and GNC/Rover 202. Provide Commodity Shop 197 & A8, Storage Rooms 197A and 198A, GNC Storage 199A, Specialty Service, and Workroom 202 & 202A. Change Playground 186 to Food Court 187. Aluminum Storefront at Amusement 188. Power Outlets and Menu Board at AF/Cl. Steel Studs, GWB bulkheads at AF/Cl | 24,986.00 | 6,004,269.68 | 0 | 27-May-99 |
| Protest | 20 | N/A | 19-Mar-99 | Weather Delays | 0.00 | 6,004,269.68 | 0 | 27-May-99 |
| Protest | 21 | 21, 75, 78 | 19-Mar-99 | Condenser Unit Pads for Cooler / Freezer - Steel Plate at W/18 for Metal Studs - Door D64 Infill - Phase 3 | 3,018.00 | 6,007,287.68 | 0 | 27-May-99 |
| Bilateral | 22 | 37, 41 | 09-Apr-99 | Storefront @ Flower Shop (Rm. 190 - Phase 3) | 1,425.00 | 6,008,712.68 | 0 | 27-May-99 |
| Bilateral | 23 | 29, 73, 80, 83, 84 | 19-Apr-99 | Undercut & Backfill Phase 5 Bldg. Pad & Parking Lot | 48,159.00 | 6,056,871.68 | 0 | 27-May-99 |
| Bilateral | 24 | 49, 67, 82, 85 | 03-Jun-99 | Turn down concrete slab at Outdoor Garden - Tie Steel Columns between Phase 2 and 5 | 17,088.00 | 6,073,959.68 | 0 | 27-May-99 |
| Bilateral | 25 | 50A, 50B, 50C, 36, 87, 88 | 10-Aug-99 | Repair Taco Bell - Downtime - buried fuel oil tank and clogged san. sewer | 102,902.00 | 6,176,861.68 | 0 | 27-May-99 |
| Bilateral | 26 | 77, 90, 91 | 10-Aug-99 | Additional Material for DPW Transformers | 10,155.00 | 6,187,016.68 | 0 | 27-May-99 |
| Bilateral | 27 | 70 | 10-Aug-99 | Change Sliding Grilles to 2 Overhead Grilles at Main Retail | 13,284.00 | 6,200,300.68 | 0 | 27-May-99 |
| Bilateral | 28 | 81, 95 | 12-Oct-99 | New Aluminum Door D110 | 1,789.00 | 6,202,089.68 | 0 | 27-May-99 |
| | 29 | 62, 71, 76 | 12-Oct-99 | Reroute Electrical at ODL to Overhead | 4,061.00 | 6,206,150.68 | 0 | 27-May-99 |
| | 30 | 86 | 12-Oct-99 | Repair Misc. Site Utility Conditions | 4,293.00 | 6,210,443.68 | 0 | 27-May-99 |
| | 31 | 92, 96, 101, 103 | 07-Jan-00 | Additional Tube Steel at MCSS Entrance - Delete C.O. #81, Amend. 28, Door D110 | -405.68 | 6,210,038.00 | 0 | 27-May-99 |
| | 32 | 81, 98 | 07-Jan-00 | Additional Labor to Locate 8" Water Line | 7,384.00 | 6,217,422.00 | 0 | 27-May-99 |

Expand Shopping Center
Fort Eustis, Virginia
Contract No. HQ 97-PZC-094

## SUMMARY OF AMENDMENTS

| | Amend. No. | C.O. No. | Date | Description of Change | Cost of Change | Contract Amount | Time Extension | Completion Date |
|---|---|---|---|---|---|---|---|---|
| | 33 | 51 | 07-Jan-00 | Extend Brick Pilasters - Fencing Cooler/Freezer and Loading Dock | 16,143.00 | 6,233,565.00 | 0 | 27-May-99 |
| Unsigned | 34 | N/A | — | Time Extension Pursuant to General Provisions . . . . . . for the following Change Order | 0.00 | 6,233,565.00 | 53 | 19-Jul-99 |
| | 35 | | | | 22,642.00 | 6,256,207.00 | 0 | 19-Jul-99 |
| Qualified | 36 | 106 | 15-May-00 | Temporary Trailers used by Vendors | 109,083.00 | 6,365,290.00 | 0 | 19-Jul-99 |
| Bilateral | 37 | 97 | 23-Oct-00 | GWB Corrections | 4,649.00 | 6,369,939.00 | 0 | 19-Jul-99 |
| **TAKE-OVER BY TRAVELLERS CASUALTY & SURETY** | | | | | | | | |
| | 38 | N/A | 23-Oct-00 | Take-over by Surety with Unpaid Balance - $863,522.00 | | 6,369,939.00 | 176 from NTP | 28-Feb-01 |
| | 39 | 01, 02, 03 | 15-Dec-00 | Re-Install Diffusers - Replpe S&R on Boiler to AHU-1 | 9,360.66 | 6,379,299.66 | 0 | 28-Feb-01 |
| | 40 | 05 | 30-Jan-01 | Misc. Deductions & Change Orders | -6,150.00 | 6,373,149.66 | 0 | 28-Feb-01 |
| | 41 | | | | | 6,373,149.66 | 0 | 28-Feb-01 |
| | 42 | | | | | 6,373,149.66 | 0 | 28-Feb-01 |
| | 43 | 08 | 07-May-01 | Move Timer to Training Room - Patch Ceiling @ Main Entrance Vestibules | 1,122.10 | 6,374,271.76 | 0 | 28-Feb-01 |

ATTACH. 6, Page 3 of 3

DA0110C

FEB-01-2007 12:43 THE YARBOROUGH LAW FIR 9104332233 P.017